Henry WILLIS, III, Plaintiff-Appellant,

v.

Walter B. ZANT, Warden, Georgia Diagnostic and Classification Center, Defendant-Appellee.

No. 82–8677.

United States Court of Appeals, Eleventh Circuit.

Nov. 17, 1983.

Joseph M. Nursey, Millard C. Farmer, Atlanta, Ga., for plaintiff-appellant.

Virginia H. Jeffries, Staff Asst. Atty. Gen., Atlanta, Ga., for defendant-appellee.

Before TJOFLAT, FAY and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

The petitioner, Henry Willis III, was convicted in the Superior Court of Bleckley County, Georgia, of malice murder. He was sentenced to death. The Georgia Supreme Court affirmed his conviction and sentence. *Willis v. State,* 243 Ga. 185, 253 S.E.2d 70 (1979). He then petitioned the Superior Court of Tatnall County, Georgia, for a writ of habeas corpus. The court denied his petition, and the Georgia Supreme Court declined to entertain an appeal therefrom. The United States Supreme Court has denied petitions for writs of certiorari to review both decisions of the Georgia Supreme Court. *Willis v. Georgia,* 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979); *Willis v. Balkcom,* 451 U.S. 926, 101 S.Ct. 2003, 68 L.Ed.2d 315, *reh'g denied,* 452 U.S. 932, 101 S.Ct. 3070, 69 L.Ed.2d 433 (1981). Willis then petitioned the district court for a writ of habeas corpus, alleging thirty-three constitutional infirmities in his conviction and sentence. The district court denied his petition without an evidentiary hearing. Petitioner presents eight of these claims to us on appeal.[1] We hold that four of these claims are without merit. Two of the remaining claims require an evidentiary hearing, and that hearing must be held before we dispose of the final claims.

. I.

Petitioner, Son Fleming, and Larry Fleming were indicted in Lanier County, Georgia, for the murder of James Giddens, Police Chief of Ray City, Georgia, on the evening of February 11, 1976. They allegedly abducted Chief Giddens following an armed robbery, shot him several times with a .357 magnum and a .22 caliber pistol, and left him to die in a South Georgia swamp.

Petitioner obtained the disqualification of the Superior Court judge who was assigned to try his case and, in succession, four other judges as well. His motion to disqualify the prosecutor was denied.[2] Petitioner's case finally went to trial on January 23, 1978. (The trials of his two co-indictees were held later, in other counties.) Petitioner, who is black and was twenty-three years old at the time of his trial, challenged the composition of the jury venire, or pool, prior to commencement of voir dire, on the ground that it did not represent a fair cross section of the community as required by the sixth and fourteenth amendments to the Constitution. The court rejected his challenge. Next, petitioner moved in limine for an order precluding the prosecutor from peremptorily challenging any black veniremen who were qualified to serve on the traverse, or petit, jury. The court denied this motion also. Jury selection proceeded, and an all-white jury was empaneled, the prosecutor having utilized, over petitioner's objection, his ten peremptory challenges to strike all ten of the qualified black venire-

---

1. In his oral argument to this court, petitioner's attorney stated that petitioner has abandoned the other 25 claims which he brought before the district court but did not argue before this court on appeal.

2. Petitioner also moved, unsuccessfully, to disqualify the judges and the special assistant prosecutor. The motions to disqualify the prosecutors are not in issue in this appeal.

men. The trial ensued. The jury found petitioner guilty of malice murder, and after considering the evidence relevant to the sentence to be imposed—death or life imprisonment—recommended the death sentence. The trial judge, being bound under Georgia law by the jury's recommendation, imposed that sentence.

Petitioner presents eight discrete federal constitutional claims in this appeal: (1) he was denied an opportunity to present evidence at his state and federal habeas corpus proceedings, in violation of the due process clause of the fourteenth amendment, because the State of Georgia failed to provide him financial assistance to obtain the evidence necessary to prove his constitutional claims and failed to transcribe, for his use, several thousand pages of pretrial proceedings; (2) his trial counsel possessed a conflict of interest, in that counsel represented both petitioner and co-indictee Larry Fleming at their separate trials, thereby denying petitioner effective assistance of counsel in violation of his sixth, and fourteenth, amendment right; (3) his confession was involuntary, and its admission into evidence against him violated due process; (4) prosecutorial misconduct rendered the guilt phase of petitioner's trial fundamentally unfair and denied petitioner due process;[3] (5) a "cognizable group"—young adults from age 18–30—was systematically excluded from petitioner's jury venire, thereby denying his sixth, and fourteenth, amendment right to a venire made of a fair cross-

section of the community; (6) the prosecutor had a history of intentionally and systematically excluding blacks from traverse juries through the use of peremptory challenges, in violation of the equal protection clause of the fourteenth amendment;[4] (7) the trial court's jury charge concerning aggravating circumstances was constitutionally defective, under the eighth, and fourteenth, amendments; and (8) prosecutorial misconduct rendered the sentencing phase of petitioner's trial fundamentally unfair and thus denied petitioner due process.

The first six of these claims pertain only to the guilt phase of petitioner's trial; the last two relate solely to the sentencing phase. We presently entertain only the claims arising out of the guilt phase, affirming summarily the district court's rejection of the first four.[5] We vacate the district court's order as to the fifth and sixth claims and remand those two claims for an evidentiary hearing. We retain jurisdiction of the case, noting that a decision on petitioner's final two claims, which stem from the sentencing phase of his trial, will be unnecessary if petitioner eventually prevails on either of the two claims remanded. We turn now to the fifth and sixth claims stated above.

## II.

### A.

Willis alleges that young adults, aged 18–30, were unconstitutionally underrepresent-

---

**3.** Petitioner alleged as one issue on appeal that prosecutorial misconduct rendered both the guilt and sentencing phases of his trial unfair. Georgia death penalty trials are divided into these two distinct and separate stages, however, and this circuit's handling of prosecutorial misconduct cases reflects this division. *Hance v. Zant,* 696 F.2d 940 (11th Cir.1983). Accordingly, we read petitioner's claim as stating two separate issues on appeal.

**4.** Petitioner also claimed that this systematic exclusion denied his rights under the sixth and eighth amendments as made applicable to the states by the fourteenth amendment. We reject these contentions *infra* note 14, and analyze this claim only under the equal protection clause of the fourteenth amendment.

**5.** These four claims have no merit. Petitioner had full opportunity to put forth evidence, and

the failure of the State to provide financial assistance for habeas proceedings states no constitutional issue. Petitioner has at no time shown a conflict of interest on the part of his attorney under *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and *Baty v. Balkcom,* 661 F.2d 391 (5th Cir. Unit B 1981). The record is replete with evidence that petitioner confessed voluntarily, *Milton v. Wainwright,* 306 F.Supp. 929 (S.D.Fla.1969), *aff'd,* 428 F.2d 463 (5th Cir.1970), *aff'd,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), and was given a fair and full hearing under *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Our study of the trial transcript shows that prosecutorial misconduct did not render the guilt phase of petitioner's trial fundamentally unfair.

ed in the jury venire that was summoned for his trial in Bleckley County. Willis claims that young adults are a "cognizable group" and that this group's underrepresentation violated his sixth amendment right, as made applicable to the states through the fourteenth amendment, to a jury venire that represents a fair cross-section of the community. *See Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *see also Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Gibson v. Zant,* 705 F.2d 1543 (11th Cir. 1983); *United States v. De Alba-Conrado,* 481 F.2d 1266, 1270, 1271 (5th Cir.1973); Daughtery, *Cross Sectionalism in Jury-Selection Procedures after Taylor v. Louisiana,* 43 Tenn.L.Rev. 1 (1975).

The state trial judge heard this challenge to the jury venire prior to the commencement of traverse jury selection. The prosecutor stipulated that young adults, aged 18–30, constituted only 10.1% of the venire even though they constituted 35.1% of the eligible jury population in Bleckley County. The judge, citing Georgia Supreme Court cases,[6] held as a matter of law that young people did not constitute a constitutionally cognizable group, said he would not consider any evidence Willis proffered on the point, and denied Willis' motion to strike the entire venire. The Georgia Supreme Court, in affirming Willis' conviction, held that the trial judge had handled this issue correctly. The magistrate to whom the district court referred Willis' petition for habeas corpus relief held likewise. In his recommendation to the district court, the magistrate concluded that young adults do not constitute a "cognizable group" under the sixth amendment's fair cross-section standard. He did permit Willis to submit surveys and a lengthy article on the issue, but did not receive them until after he had made his recommendation, to which Willis objected, to the district court. The district court, in its one paragraph review and adoption of the magistrate's recommenda-

tion, gave no indication that it accorded these submissions any consideration. Petitioner states, quite correctly, that he has yet to receive an evidentiary hearing on this claim. The three courts that have passed on it have summarily concluded that people aged 18–30 cannot constitute a cognizable group under the sixth amendment.

 Whether or not a class of persons is a sufficiently distinct and cognizable for sixth amendment fair cross-section analysis is a question of fact. *Hernandez v. Texas,* 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954) ("whether such a group exists within the community is a question of fact"). *See also, United States v. De Alba-Conrado,* 481 F.2d 1266, 1270, 1271 (5th Cir. 1973) (remanding case for determination of cognizable group). The distinctiveness and homogeneity of a group under the sixth amendment depends upon the time and location of the trial. For example, Latins have been held to be a cognizable group in Miami, Florida.[7] In another community, they might not be. To show that a group is distinct or cognizable under the sixth amendment, a defendant must show: (1) that the group is defined and limited by some factor (i.e., that the group has a definite composition such as by race or sex); (2) that a common thread or basic similarity in attitude, ideas, or experience runs through the group; and (3) that there is a community of interest among members of the group such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process. *United States v. Gruberg,* 493 F.Supp. 234 (S.D.N.Y.1979); *see also United States v. Test,* 550 F.2d 577, 584 (10th Cir.1976); *United States v. Guzman,* 337 F.Supp. 140, 143–44 (S.D.N.Y.1972), *aff'd,* 468 F.2d 1245 (2d Cir.1972), *cert. denied,* 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973).

 Petitioner claims that young adults constituted a distinct group, within the above test, in Bleckley County, Georgia, at

---

6. *State v. Gould,* 232 Ga. 844, 209 S.E.2d 312 (1974); *White v. State,* 230 Ga. 327, 196 S.E.2d 849 (1973).

7. *See United States v. Cabrera-Sarmiento,* 533 F.Supp. 799, 804 (S.D.Fla.1982) (Circuit Judge Hatchett, sitting by designation).

the time of his trial. He states that this group contained the only South Georgians who were reared and educated in a desegregated society. Thus, the white members of this group could more easily understand and relate to petitioner, a twenty-three year old black man, than could older whites. We do not comment on the merits of petitioner's contention;[8] rather, we vacate the denial of relief on this issue and remand it to the district court for an evidentiary hearing.[9] Petitioner is entitled to a chance to prove his claim; the court should, if necessary, allow discovery under 28 U.S.C.A. fol. § 2254 Rule 6 (1977).

To make out a prima facie case, petitioner must show more than mere exclusion of a distinct group. He must show: (1) that the group alleged to have been excluded was a distinctive group in the community, as defined, *supra;* (2) that the representation of this group on his jury venire was not fair and reasonable in relation to the number of such persons in the community;[10] and (3) that this underrepresentation was due to the State's systematic exclusion of the group from the venire. *Duren,* 439 U.S. at 364, 99 S.Ct. at 668.

■ In determining whether petitioner has established a prima facie case of exclusion, the district court must bear in mind that, as the Supreme Court has cautioned, states are free to prescribe relevant qualifications for jury service and reasonable exemptions therefrom. *Duren,* 439 U.S. at 367, 99 S.Ct. at 670; *Taylor,* 419 U.S. at 538, 95 S.Ct. at 701. If these qualifications and exemptions result in a disproportionate ex-

clusion of a distinct group, however, the state must show that they manifestly and primarily advance a significant state interest. *Duren,* 439 U.S. at 367–68, 99 S.Ct. at 670.

■ Although the distinctiveness of a group for sixth amendment purposes is a question of fact, we must add a caveat. Certainly, a court can determine as a matter of law that a group is not cognizable or distinct. For example, no evidentiary hearing would be needed to determine that redheads or vegetarians are not distinctive classes within sixth amendment fair cross-section analysis. We only hold that the group distinctiveness of young adults in South Georgia during the late 1970's does not lend itself to such an easy determination.

B.

Petitioner alleges that he was denied his sixth, eighth, and fourteenth amendment rights because he was a victim of the prosecutor's historical and systematic use of peremptory challenges to remove black persons from traverse juries. In empaneling the jury to try this case, the court summoned 449 veniremen. Three hundred twenty were excused for various reasons, none of which are germane to this appeal, and 129 (ninety-eight white and thirty-one black) were subjected to complete voir dire by the parties. Of these 129, the court excluded twenty because of their attitudes against the death penalty (three white and seventeen black), forty-eight for prejudice, and

8. We do note that the Southern District of Florida has found that adults under the age of 30 in that district do not constitute a separate cognizable group within the meaning of the fifth amendment. *Id. But see LaRoche v. Perrin,* 718 F.2d 500 (1st Cir.1983) (unexplained "shortfall of youth" in jury venire states valid sixth amendment claim under *Duren*). *But see also Cuadadanos Unidos de San Juan v. Hidalgo,* 622 F.2d 807, 818 (5th Cir.1980) cert. denied, 450 U.S. 964, 101 S.Ct. 1479, 67 L.Ed.2d 613 (1980).

9. This case differs from *Cox v. Montgomery,* 718 F.2d 1036 (11th Cir.1983). In that case we held that the trial court did not err by declining

to provide funds to enable the defendant to hire a sociologist to prove that young adults are a cognizable group. The record in *Cox* makes clear that whether young adults were a cognizable group was not a material issue in the case. The trial court found that even if young adults were cognizable, there was no systematic exclusion.

10. *See, e.g., Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); *Preston v. Mandeville,* 428 F.2d 1392, 1393–94 (5th Cir.1970).

five for other reasons. None of these excusals is questioned here. This left fifty-six veniremen, all competent to serve as traverse jurors.

The prosecutor, Vickers Neugent, District Attorney of the Alapaha Circuit, possessed ten peremptory strikes; the defense had twenty. Operating under Georgia's "struck jury" system, (former) Ga.Code Ann. §§ 59–805, 808, the court presented one by one the fifty-six veniremen to the parties. The court presented each venireman to the prosecutor first; he accepted or peremptorily struck the venireman. If the venireman was accepted, the court presented him to defense counsel, who would accept or strike. The traverse jury consisted of the first twelve veniremen who were accepted by both sides. The selection of two alternate jurors was accomplished in the same manner, the prosecution having two peremptory challenges and the defense four.[11] Following this procedure, the traverse jury, not including the alternates, was selected from the first forty of the fifty-six competent veniremen.[12]

Of the forty potential jurors, thirty were white and ten were black. The prosecutor used all ten of his peremptories to strike all the blacks who were presented as regular jurors. Additionally, the one alternate peremptory challenge the prosecutor exercised was used to strike the one black presented as a potential alternate juror. Willis thus went to trial with an all-white jury, with white alternates.

Petitioner claims that the jury selection tactic the prosecutor employed in his case was merely the prosecutor's application of his historic, systematic practice of excluding blacks from traverse juries through the use of the peremptory challenge. Petitioner has been steadfast in his assertion of this complaint. He presented it initially to his trial judge before jury selection began, contending that the prosecutor would peremptorily strike blacks as part of a historic, systematic pattern and seeking an order admonishing the prosecutor not to follow the practice in Willis' case.[13] Willis sought leave to present a speaking proffer in support of his claim, but the trial judge denied his request, ruling that Willis had no claim regardless of what the facts might show as to the prosecutor's past practice and his subsequent conduct in striking the jury in Willis' case. Willis presented his claim to the trial judge again, after the prosecutor had peremptorily challenged every black submitted by the Court and the jury was ready to be sworn. The trial judge, adhering to his earlier ruling, again rejected Willis' claim.

Willis presented his claim a third time, in the direct appeal of his conviction and sentence to the Georgia Supreme Court. That court stated that Willis had foreclosed his claim by not asking the trial court to overturn the Georgia statute authorizing peremptory challenges; the court held that "[s]o long as the statute is valid the District Attorney may use such challenges in his discretion." *Willis v. State,* 243 Ga. 185, 253 S.E.2d 70, 73, *cert. denied,* 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979). Finally, Willis presented his claim to the district court in his petition for habeas corpus relief. The district court, adopting the magistrate's recommendation, concluded that the claim was meritless. The court based its conclusion on a case from the former Fifth Circuit, *United States v. Carlton,* 456 F.2d

---

**11.** Georgia law granted the defense four challenges, but, as the case turned out, Willis actually had six peremptory challenges to alternates because he only used 18 of his 20 available challenges in seating the regular jury. The two unused challenges carried over. In all, he exercised five peremptory challenges to alternates and 18 to potential members of the regular panel.

**12.** The two alternates were selected from a group of eight veniremen presented, one by one, to the State and then to Willis. In seating the alternates, the prosecutor exercised one peremptory challenge, against the only black, and Willis exercised five. *See supra* note 11.

**13.** We do not address whether a defendant could ever properly seek an order limiting prosecutorial discretion in this matter *before* the prosecutor has exercised his peremptory challenges. It is clear, however, that a defendant may object to the panel after it has been selected, and that Willis did.

207, 208 (5th Cir.1972) (per curiam), which held that a defendant may not inquire into the prosecutor's reasons for exercising a peremptory challenge. That proposition is true, but the court ignored the caveat we added in *Carlton:* "We hasten to add that where regular practice or custom involving the use of peremptory challenges results in an effective disenfranchisement of a particular class of persons from serving on petit juries ... the Constitution may well dictate a different result." *Id.,* citing *Swain v. Alabama,* 380 U.S. 202, 224, 85 S.Ct. 824, 838, 13 L.Ed.2d 759 (1965). The very gist of petitioner's claim is that the prosecutor had historically and systematically employed his peremptory challenges to disenfranchise blacks, and did so in petitioner's case. This is squarely within the exception we noted in *Carlton.*

██ This appeal arises solely under the equal protection clause of the fourteenth amendment.[14] The Supreme Court was faced with a very similar claim in *Swain, supra.*[15] *Swain* teaches that a prosecutor's use of peremptory challenges to strike all the blacks on a traverse jury is not improper since the "presumption in any case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court." 380 U.S. at 222, 85 S.Ct. at 837. *Carlton,* 456 F.2d at 208; *United States v. Pearson,* 448 F.2d 1207, 1216–18 (5th Cir.1971); *United*

*States v. Williams,* 446 F.2d 486, 488 (5th Cir.1971). This presumption of propriety insulates from inquiry the removal of blacks from any individual traverse jury. Thus petitioner has no constitutional right to a traverse jury that includes a member of his race. *United States v. Calhoun,* 542 F.2d 1094, 1103 (1976), *cert. denied sub nom Stephenson v. United States,* 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977); *see also United States v. Boykin,* 679 F.2d 1240, 1245 (8th Cir.1982); *United States v. Gonzalez,* 456 F.2d 1067, 1068 (9th Cir.1972); *Pearson,* 448 F.2d at 1213–15.

██ Petitioner, however, has alleged a *systematic* practice of exclusion. As the *Swain* Court stated, "this claim raises a different issue and it may well require a different answer...." 380 U.S. at 223, 85 S.Ct. at 837. "[This practice] is invidious discrimination for which the peremptory system is an insufficient justification." *Id.* The Court went on to hold:

[W]hen the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim

---

14. On appeal, petitioner states that the prosecutor's historical use of peremptory challenges violated his sixth amendment right, which, according to petitioner, guaranteed a traverse jury representing a fair cross-section of the community. Although this sixth amendment claim is colorable, *see United States v. Childress,* 715 F.2d 1313 (8th Cir.1983) (en banc); *People v. Payne,* 103 Ill.App.3d 1034, 62 Ill.Dec. 744, 436 N.E.2d 1046 (1982), *appeal docketed,* No. 56709 (Ill.1983), we decline petitioner's invitation to extend the sixth amendment's cross-section analysis under *Taylor, supra,* to the traverse jury itself. *Taylor* remains limited to venires. The United States Court of Appeals for the Eighth Circuit recently considered the issue in depth and was unwilling to read the sixth amendment so broadly. *Childress.* Petitioner cites no countervailing authority of any weight. Petitioner also contends that the prosecutor's exclusion of blacks through peremptory challenges violated his eighth amendment

right to be free from cruel or unusual punishment. This contention is meritless.

15. In *Swain* the defendant attacked the underrepresentation of blacks on grand juries and petit jury venires, and the exclusion through peremptory challenges of blacks from petit juries in Talladega County, Alabama. In the instant case, petitioner has alleged that the District Attorney of the Alapaha Judicial Circuit of Georgia systematically excluded blacks from traverse (petit) juries, including petitioner's. Although *Swain* did not involve a challenge to the practices of a single prosecutor, this claim falls squarely under *Swain* as interpreted by this circuit, *United States v. Pearson,* 448 F.2d 1207 (5th Cir.1971), *accord Carlton, supra,* and other courts. *See, e.g., United States v. Childress,* 715 F.2d 1313 (8th Cir.1983) (en banc), citing *State v. Brown,* 371 So.2d 751 (La.1979); *State v. Washington,* 375 So.2d 1162 (La.1979).

takes on an added significance.... In these circumstances ... it would appear that the purpose of the peremptory challenge are [sic] being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecution may well be overcome.

*Id.* at 223–24, 85 S.Ct. at 837–38 (citations omitted). Petitioner has never been afforded an opportunity to present his case under this holding. He is entitled to one, and we vacate the district court's ruling on this issue and remand for an evidentiary hearing.

The Supreme Court has never stated the elements of a prima facie case under *Swain.* Winning *Swain* claims are exceedingly rare. We are unable to find any case from this circuit where the defendant has prevailed under *Swain.* In its recent decision on this issue,[16] the Eighth Circuit, en banc, stated that it could find only two winning *Swain* claims anywhere. *State v. Brown,* 371 So.2d 751 (La.1979); *State v. Washington,* 375 So.2d 1162 (La.1979). Commentators have criticized *Swain* severely because of the difficulty defendants have had in proving systematic exclusion through the use of peremptory challenges.[17]

We provide the following elucidation to aid the district court in its handling of this claim. At his evidentiary hearing, petitioner must prove on specific facts [18] that Vickers Neugent had a systematic *and intentional* practice of excluding blacks from traverse juries in criminal trials through the

exercise of peremptory challenges, and that this practice continued unabated in petitioner's trial. The exclusion must have occurred "in case after case, whatever the circumstances, whatever the crime and whoever the defendant may be." *Swain,* 380 U.S. at 223, 85 S.Ct. at 837. Petitioner is not required to show that the prosecutor *always* struck *every* black venireman offered to him, *Pearson,* 448 F.2d at 1217, but the facts must manifestly show an intent on the part of the prosecutor to disenfranchise blacks from traverse juries in criminal trials in his circuit, "to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population." *Swain,* 380 U.S. at 224, 83 S.Ct. at 838. The prosecutor's use of peremptory challenges in only a few trials is clearly insufficient to state a prima facie case,[19] as would be a pattern of exclusion which occurred for only a few weeks. In short, petitioner must marshal enough historical proof to overcome the presumption of propriety in which *Swain* clothes peremptory challenges, and thereby show Neugent's intent to discriminate invidiously.

If petitioner can prove his prima facie case, the veil insulating prosecutorial discretion will be rent. The prosecutor, however, may rebut petitioner's prima facie case in two ways. First, he may make "a showing that racially neutral selection procedures have produced the [historical and systematic] disparity." *United States v. Perez-Hernandez,* 672 F.2d 1380, 1387 (11th Cir.1982), citing *Alexander v. Louisiana,* 405 U.S. 625,

**16.** *United States v. Childress,* 715 F.2d 1313 (8th Cir.1983) (en banc).

**17.** *See, e.g.,* Brown, McGuire & Winters, *The Peremptory Challenge as a Manipulative Device in Criminal Trials: Traditional Use or Abuse,* 14 New Eng.L.Rev. 192, 196–202 (1978); Kuhn, *Jury Discrimination: The Next Phase,* 41 S.Calif.L.Rev. 235, 302 (1968); Winick, *Prosecutorial Peremptory Challenge Practices in Capital Cases: An Empirical Study and A Constitutional Analysis,* 81 Mich.L.Rev. 1, 10–11 (1982); *The Supreme Court, 1964 Term,* 79 Harv.L.Rev. 56, 135–39 (1965); Comment, *The Prosecutor's Exercise of the Peremptory Challenge to Exclude Nonwhite Jurors: A Valued Common Law Privilege in Conflict with the*

*Equal Protection Clause,* 46 U.Cin.L.Rev. 554, 559–60 (1977); Comment, Swain v. Alabama: *A Constitutional Blueprint for the Perpetuation of the All-White Jury,* 52 Va.L.Rev. 1151, 1160–63 (1966); Note, *Limiting the Peremptory Challenge: Representation of Groups on Petit Juries,* 86 Yale L.J. 1715, 1723 & n. 36 (1977).

**18.** This proof could be direct evidence, such as testimony, or indirect evidence such as statistical proof. Mere allegations are insufficient. *See, United States v. Ward,* 610 F.2d 294, 295 (5th Cir.1980); *Pearson,* 448 F.2d at 1215–17.

**19.** *Id.* at 1213–15 ("clearly such a claim cannot be established by proof of the Government's striking of Negroes in any one case").

631–32, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972). In equal protection cases such as this, however, mere "affirmations of good faith ... are insufficient to dispel a prima facie case of systematic exclusion," *id.* at 632, 92 S.Ct. at 1226, and "a mere denial of discriminatory intent will not suffice." *Perez-Hernandez,* 672 F.2d at 1387, citing *Turner v. Fouche,* 396 U.S. 346, 361, 90 S.Ct. 532, 540, 24 L.Ed.2d 532 (1970). This is not to say that testimony alone is per se insufficient. We believe, however, that if petitioner can show a prima facie case, "testimony from the alleged discriminators should be viewed with a great deal of judicial scrutiny." *Perez-Hernandez,* 672 F.2d at 1387.

A second way in which the prosecutor may rebut a prima facie case under *Swain* is not to show racially neutral reasons for the systematic disparity, but rather to show neutral reasons for the striking of all the blacks in petitioner's trial itself. The prosecutor may have had strategic reasons unrelated to race for striking the eleven blacks in Willis' case. If so, he may bring them to the district court's attention and—subject to the caveat above concerning testimony of alleged discriminators after a prima facie case is shown—the district court could credit this testimony as adequate rebuttal. We realize that this lays bare the prosecutor's thought processes and requires judicial inspection of the prosecutor's trial strategy concerning the selection of a single jury. *Swain* teaches, however, that the presumption of correctness and the insulation surrounding the prosecutor's discretion cannot survive the presentation of a prima facie case of systematic exclusion. 380 U.S. at 221–24, 85 S.Ct. at 836–38. If a prosecutor wishes not to disclose his methods of strategy, he can forego this avenue of rebuttal.

### III.

We remand the case to the district court for an evidentiary hearing on the two claims we have discussed above, but retain jurisdiction of this appeal. We direct the district court to certify its findings and conclusions on these two claims to us within 120 days.

Accordingly, this case is

AFFIRMED in part, VACATED in part, and REMANDED.