Landy Haywood SPEAKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–86–0634–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 8, 1987.

David A. Jameson, David A. Jameson, P.C., Galveston, for appellant.

Michael J. Guarino, Galveston Co. Dist. Atty., Michael E. Clark, Galveston Co. Asst. Dist. Atty., Galveston, for appellee.

Before SAM BASS, EVANS and LEVY, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a conviction for burglary of a habitation. After a jury found appellant guilty as charged, the court found an enhancement allegation to be true and assessed punishment at 15 years.

We reverse and remand.

In September 1985, Officer Carl Turner of the Galveston Police Department stopped a car because its taillights were flickering. The car had a television on the top of the car, and another television and other items in the back seat.

The appellant was driving the car, and Michael Goodlow was sitting in the front passenger seat. Officer Turner asked both men for their names and identification, and then called headquarters to check on any outstanding warrants, to seek additional help, and to see if any burglaries had been reported. While waiting for a report, Turner asked appellant where the property

came from, and appellant replied that he "got it from his sister's house." Turner received a report that no burglaries had been reported, but that appellant had an outstanding warrant for assault. Turner arrested the appellant.

Craig Fos, an identification officer, told appellant that his fingerprints were being taken to be compared with those lifted from a burglary. Appellant told Fos that he was not "stupid enough to leave prints" and that "it would be quite confusing because four other men had gone into the house." Fos testified that appellant told him that the only thing they had on him was possession of stolen property. The burglary was not reported by the owner until the next morning.

A jury trial commenced on April 15, 1986, rendering a verdict of guilty. A punishment hearing before the court was held on May 29, 1986, at which appellant pled "not true" to the enhancement paragraph. The court found the enhancement charge to be "true," and assessed punishment at 15 years confinement. On June 5, 1986, a hearing on appellant's motion for new trial was held, at which appellant complained that he did not receive a fair and impartial trial because of the composition of the petit jury. Specifically, he contended that there was a conscious design of the prosecutor to remove members of the black race from his jury.

In point of error one, appellant contends that the trial court erred by denying his motion for new trial. This motion was based on alleged violations of his rights to due process, equal protection of law, and a fair trial by a jury composed without reference to racial prejudice.

On April 29, 1986, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was handed down. The Supreme Court determined that a defendant could make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. *Batson*, 106 S.Ct. at 1722–23. To establish such a prima facie case, a defendant:

1) first must show that he is a member of a recognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race;

2) is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate; and,

3) must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Id.* Once a prima facie case has been made by the defendant, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors that is related to the particular case to be tried. *Id.*

In the case at bar, the panel contained 10 individuals who were black. The prosecutor used nine of its strikes to remove every black person from the jury. The tenth black venireman was struck by defense counsel.

Defense counsel did not object to the impaneling of the jury on the grounds of racial discrimination.

■ The State claims that appellant waived his point of error because appellant failed to timely object before the jury was impaneled, as occurred in *Batson*. We hold that appellant preserved his claim of error when he filed his motion for new trial. Because *Batson* had not yet been decided, when this case was tried, there were no prerequisites established for this type of complaint. In *Griffith v. Kentucky*, —— U.S. ——, 107 S.Ct. 708, 709, 93 L.Ed.2d 649 (1987), the Supreme Court held that *Batson* is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered. Thus, *Batson* applies retroactively because a decision in this case was not final at the time *Batson* was decided. *See DeBlanc v. State*, 732 S.W.2d 640, 642 (Tex.Crim.App. 1987).

At the hearing on the motion for new trial, the State conceded that a prima facie case of discrimination had been established. The State then had the burden to rebut the appellant's prima facie case by articulating neutral explanations for the peremptory strikes of the eight black veniremen. *Batson*, 106 S.Ct. at 1723.

■ Whether "purposeful discrimination" has been shown is a question that a trial court must determine in the light of all the "circumstantial and direct evidence of intent as may be available." *Id.* at 1721. If the State makes an explanation that is facially adequate, the trial court then has the duty to determine if the defendant has proven a case of purposeful discrimination. *Id.* at 1723–24. This requires the court to make a factual finding, which usually will involve the credibility of the witnesses. On appeal, the reviewing court must give great deference to the trial court's findings on this issue. *Id.* at 1724 n. 21.

■ In this case, the trial court never reached the point of a factual determination of whether purposeful discrimination had been proven because the prosecutor's explanation of his peremptory strikes was facially inadequate as a matter of law. At the hearing on the motion for new trial, the prosecutor admitted:

> Although race is a factor I do consider, it is not an overriding factor and it was not an overriding factor in Mr. Speaker's trial in the selection of these jurors.

While the prosecutor's candor is commendable, his statement clearly shows that he considered race a factor while selecting the jurors in the appellant's trial. This basis for juror selection has traditionally been condemned. *See Cassell v. Texas*, 339 U.S. 282, 287, 70 S.Ct. 629, 632, 94 L.Ed. 839 (1950) ( [a]n accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race). While we realize that it may be unrealistic to expect the prosecutor to put aside every improper influence when selecting a juror, we conclude that that is exactly what the law requires. Thus, a prosecutor's admission that race was an influencing factor in the selection process vitiates the legitimacy of the entire procedure. *See Batson* 106 S.Ct. at 1719; *Neal v. Delaware*, 103 U.S. (Otto) 370, 397, 26 L.Ed. 567 (1881).

We accordingly sustain the appellant's first point of error.

In his second and third points of error, the appellant urges that the trial court erred in refusing to dismiss the charges because there is insufficient evidence to convict him, and also erred by refusing to submit a requested charge on circumstantial evidence.

■ The test applied on an insufficient evidence claim is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found appellant guilty beyond a reasonable doubt on the indictment. *Tisdale v. State*, 686 S.W.2d 110, 114 (Tex. Crim.App.1985). Further, a conviction based on circumstantial evidence must exclude every other reasonable hypothesis except the guilt of the accused. *See Carlsen v. State*, 654 S.W.2d 444, 447 (Tex.Crim. App.1983). It is not required that the circumstances should, to a moral certainty, actually exclude every hypothesis that the act may have been committed by another person, but only those that are reasonable and consistent with the circumstances and the facts proved. *Id.* Each fact need not point directly and independently to the guilt of the accused, as the cumulative effect of all the incriminating facts may be sufficient to support the evidence. *Id.* Proof that amounts only to a strong suspicion or mere probability, however, is insufficient. *Id.*

■ Officer Turner testified that he had stopped appellant, who was driving a car that contained stolen property. Turner stated that appellant told him that the property belonged to his sister. It was later determined that the property belonged to a third party. The burglary occurred about the time Turner apprehended appellant, and it was reported by the owner after he had returned home from work later that night.

The record further shows that appellant told Officer Fos that he would not have been stupid enough to leave his fingerprints; that four people had been inside the house; and that he could be charged only with possession of stolen property.

■ A jury is entitled to accept one version of facts and reject another, or reject any or all of a witness' testimony. *See Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App.1981). After reviewing the evidence in the light most favorable to the State, we find that any rational trier of fact could have found appellant guilty beyond a reasonable doubt.

■ Appellant asserts that an instruction on circumstantial evidence should have been given in the charge. Where a jury is properly instructed on the State's burden of proof, the presumption of innocence, and the requirement that an acquittal be entered if there existed reasonable doubt about defendant's guilt, the trial court can properly refuse to give an instruction on circumstantial evidence. *See Hankins v. State*, 646 S.W.2d 191, 199 (Tex.Crim.App. 1981). Because the charge given properly stated the State's burden of proof, the presumption of innocence, and the requirement that acquittal be entered if there existed reasonable doubt about the defendant's guilt, the trial court did not err in refusing to include the circumstantial evidence instruction.

Points of error two and three are overruled.

The judgment is reversed, and the case is remanded for a new trial.

LEVY, Justice, concurring.

More than a century ago, the United States Supreme Court invalidated a West Virginia statute providing that black citizens could not serve as jurors. *Strauder v. West Virginia*, 100 U.S. (Otto) 303, 25 L.Ed. 664 (1880). Although the means used by several states to exclude blacks have since become more subtle, the same pernicious practice has continued. *See Swain v. Alabama*, 380 U.S. 202, 231–238, 85 S.Ct. 824, 841–46, 13 L.Ed.2d (1965)

(Goldberg, J., dissenting). Discrimination within the judicial system—particularly at any stage in the jury selection process—is most invidious because it is "a stimulant to that race prejudice which is an impediment to securing to [blacks] that equal justice which the law aims to secure to all others." *Strauder*, 100 U.S. at 308, 25 L.Ed. 664.

In substantive terms, Justice Powell's opinion for the 7–2 majority in *Batson v. Kentucky*, 106 S.Ct. 1712 (1986), professes not to go beyond the pronouncements in *Swain v. Alabama*, that the State's exclusion from a jury of members of the defendant's own race, solely on racial grounds, violates the Equal Protection Clause of the Constitution of the United States. Where *Swain* held that the discriminatory use of peremptory challenges was improper, but only if the particular prosecutor discriminated "in case after case, whatever the circumstances, whatever the crime, and whoever the defendant or the victim may be," 380 U.S. at 223, 85 S.Ct. at 837, the Court now says that striking blacks because they are black *in a single case* will constitute a constitutional violation. *Batson v. Kentucky*, 106 S.Ct. at 1722. No longer do evidentiary requirements dictate that "several must suffer discrimination" before one could object. *McCray v. New York*, 461 U.S. 961, 965, 103 S.Ct. 2438, 2440, 77 L.Ed.2d 1322 (1983) (Marshall, J., dissenting from denial of certiorari); *see also Batson v. Kentucky*, 106 S.Ct. at 1722.

As this Court's majority said, quoting *Batson*, 106 S.Ct. at 1723, the defendant must show, under the new procedure, that he is a member of a cognizable racial group and that the prosecutor has used peremptory strikes to eliminate members of that group from the jury. Because it can be assumed that the exercise of peremptories is inherently subject to discriminatory operation, the defendant next must show "that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson v. Kentucky*, 106 S.Ct. at 1722. *If a prima facie case of racially*

*motivated discrimination is established, the prosecutor must come forward with an explanation of how "permissible racially neutral selection criteria and procedures have produced the monochromatic result." Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed. 2d 536 (1972).

It is here where my credulity in the instant case is strained "beyond the bursting point."

The jury panel in the case at bar consisted of 32 qualified jurors, of whom 10 were black. The prosecution used nine of its 10 peremptories to remove every black person except one from the panel, the tenth being struck by defense counsel. With commendable candor, the State conceded that a prima facie case of discrimination had been established, and that appellant, a black, was tried by an all-white jury. The result, indeed, bespeaks discrimination and not chance. More than 40 years ago, when national awareness of racial discrimination was much less sensitive, the Supreme Court held that total or seriously disproportionate exclusion of blacks from jury venires is itself such an "unequal application of the law ... as to show intentional discrimination." *Akins v. Texas,* 325 U.S. 398, 404, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692 (1945). It is surely time, then, for courts and prosecutors to remove their racial blinders.

My examination of the prosecutor's explanations induces me to infer that he was less than Olympian in his racial detachment. In addition to his striking an overwhelmingly disproportionate number of jurors who were black (i.e., *all* of them), the validity of the "neutral" justifications asserted for doing so is brought into serious question by the triviality and irrelevance of some of the reasons advanced, viz.:

1) age (29 years), social worker, no children, single;

2) unemployed, young, unmarried;

3) had gunshot wound; misspelled "Baptist";

4) uneducated custodian, address possibly close to appellant;

5) a student, young, probably liberal;

6) unemployed, probably poorly educated, a follower;

7) young, bad address;

8) young (28), bad address;

9) young (30), one child, reason struck unknown.

One might conclude from the foregoing analysis that for a black—but not necessarily a white—to have "qualified" for appellant's jury, he or she must be over the age of 30, be employed and educated, but not be a custodian or social worker, be married and have more than one child, not be a "follower" or live in a community that is predominantly black, and be able to spell "Baptist."

If these insubstantial assertions are accepted as rebutting the appellant's prima facie case, the Equal Protection Clause "would be a vain and illusory requirement." *Norris v. Alabama,* 294 U.S. 587, 598, 55 S.Ct. 579, 583, 79 L.Ed. 1074 (1935). Indeed, if *all* persons were eliminated from the panel on the basis alleged, few if any jury trials could proceed anywhere in Texas. The common element in eliminating *all* the above veniremen, inconsistent trivialities aside, was race; each of those struck was black, and the prosecutor admitted during the hearing on the motion for new trial:

> Although race is a factor I do consider, it is not an overriding factor and it was not an overriding factor in Mr. Speaker's trial in the selection of these jurors.

This admission alone would, in my judgment, justify a reversal. My reading of *Batson* indicates that race does not have to be an "overriding" factor, so long as it is *influential* in the jury selection process. In the eyes of the law, a person's race is simply irrelevant to his fitness as a juror. Here, the prosecutor struck two black veniremen even though his own rating system evaluated them as *more* "state-oriented" than whites whom he kept. It is not enough for the prosecutor to say that he acted on an assumption, however intuitive, that the jurors would be biased and partial to the defendant because they are of his race. A prosecutor's own conscious *or un-*

*conscious* racism may easily seduce him into concluding that a prospective black juror is "hostile" or "sullen," a characterization that would not have come to his mind if a white juror had acted identically. A judge's own conscious *or unconscious* racism may lead him to accept such an explanation as well supported. But exclusion of blacks from a jury, primarily because of race, can no more be justified by a stereotypical belief that blacks are less likely to consider impartially the State's case against a black defendant than it can be justified by the notion that blacks lack the "intelligence, experience, or moral integrity," *Neal v. Delaware,* 103 U.S. (Otto) 370, 397, 26 L.Ed. 567 (1881), to be entrusted with that role. Justice Powell wrote for the Supreme Court that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson,* 106 S.Ct. at 1719.

Two years ago, prior to *Batson,* a similar case alleging racial discrimination in jury selection was before our Court, and in a concurring opinion predicated on the Due Process Clause, I expressed views that still seem relevant today:

> Where the prosecutor strikes all members of the venire who are members of a recognizable ethnic group, logic would certainly allow, if not require, the presumption to arise that such striking amounts to systematic exclusion of that group, even if on an *ad hoc* basis, and thereby shift the burden to the prosecutor, upon timely objection, to justify his action on non-racial grounds or have the jury panel quashed. *See Willis v. Zant,* 720 F.2d 1212 (11th Cir.1983). Reliance on the good faith of a prosecutor entrusted with participating in the selection of jurors for the administration of criminal justice is not in itself an investiture of discriminatory power offensive to due process. Representing as it does a *living* principle, "due process" is not confined within a permanent catalog of what may at a given time be deemed the limits or the essentials of fundamental rights.

> The right of a prosecutor to peremptory challenges is so established today that it leads to the easy assumption that it is fundamental to the protection of life and liberty and therefore a necessary ingredient of due process of law. But we should not confuse the familiar with the necessary. "Due process" is, perhaps, the least frozen concept of our law, the least confined to history, and the most absorptive of powerful social standards of a progressive society.

*Metters v. State,* 695 S.W.2d 88, 91 (Tex. App.—Houston [1st Dist.] 1985, no pet.).

Neither is reliance on a prosecutor's good faith in the selection of jurors an investiture of discriminatory power offensive to the equal protection of the laws. In a conflict between the Equal Protection Clause and the procedural right of a prosecutor to peremptorily strike venire members, the constitutional guarantee—and the integrity of the jury system—must prevail. The Constitution demands the *total,* uncompromising racial neutrality of the jury selection process. Such was explicitly absent here, and I must therefore conclude that the trial judge abused his discretion in overruling appellant's motion for new trial.

It is significant that although the *Swain* court emphasized the "very old credentials" of the peremptory challenge, 380 U.S. at 212, 85 S.Ct. at 831, Justice Marshall noted while concurring in *Batson,* 106 S.Ct. at 1729, that the Supreme Court

> has also repeatedly stated that the right of peremptory challenge is not of constitutional magnitude, and may be withheld altogether without impairing the constitutional guarantee of impartial jury and fair trial.... If the prosecutor's peremptory challenge could be eliminated only at the cost of eliminating the defendant's challenge as well, I do not think that would be too great a price to pay.

> .    .    .    .    .    .

> [O]nly by banning peremptories entirely can such discrimination be ended. *Id.* (citations omitted).

I would very much prefer to believe that prosecutors and trial judges will perform their respective duties under the Constitution sensitively and with fastidious impartiality, and thus make abandonment or evisceration of this historic trial practice unnecessary. Most profoundly do I agree with Justice Powell in *Batson* at 1724: "In view of the heterogeneous population of our nation, public respect for our criminal justice system and the rule of law will be strengthened if we ensure that no citizen is disqualified from jury service because of his race."