**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 12a0492n.06**

**No. 10-5465**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| BILLY FRANKLIN JOHNSON, III, | ) | |
| | ) | **FILED** |
| Petitioner-Appellant, | ) | ***May 14, 2012*** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Middle |
| CHERRY LINDAMOOD, Warden, | ) | District of Tennessee |
| | ) | |
| Respondent-Appellee. | ) | |

Before:        KEITH, BOGGS, and MOORE, Circuit Judges.

BOGGS, Circuit Judge.    Prisoner Billy Johnson appeals the denial of his writ of habeas corpus.    He argues that the district court erred when it determined that he procedurally defaulted his claims of mental incompetence to stand trial and ineffective assistance of trial counsel. We affirm the judgment of the district court.

I

On January 20, 1998, petitioner Billy Johnson killed Billy Wiggins in Nashville, Tennessee. Johnson, nineteen at the time of the offense, had a history of mental problems and serious alcohol and drug abuse.  Two years before he killed Wiggins, Johnson was treated for depression.  A year

before, Johnson was hospitalized for eight months for substance abuse. Six months before, he was hospitalized after overdosing on cocaine.

On January 2, 1998, a few weeks before he killed Wiggins, Johnson was hospitalized, complaining of seeing things and feeling pressure and hearing noises in his head. The treating physician was concerned that Johnson might be "a little psychotic." Johnson was discharged on January 5. On January 10, 1998, Johnson was hospitalized again for "attempted suicide via OD of antidepressants, cocaine, and benzodiazepines." He was diagnosed with a "Major Depressive Episode," a "Substance Induced Mood Disorder," a "History of Anxiety Disorder." He was released on January 15, with a prescription for Paxil. He killed Wiggins on January 20, five days after he was released.

The record suggests that Johnson and Wiggins met when Wiggins invited Johnson to stay at his residence because Johnson was homeless. Another homeless man, David Lackey, was also staying with Wiggins. According to Johnson, Wiggins gave him a place to stay in the hopes of obtaining sexual favors. He pressured Johnson for sex, but Johnson refused. After Wiggins went to sleep, Johnson, who had been drinking whiskey and beer and who had taken pills of an unknown type, given to him by Wiggins, "snapped." He heard "screeching and screaming" inside his head. He told Lackey that he was going to kill Wiggins. He got a sledgehammer out of Wiggins's garage. He hit the sleeping Wiggins three times with the sledgehammer. Johnson and Lackey then stole electronic equipment and Wiggins's car. While driving, they hit a telephone pole and fled the scene of the accident. Johnson rode a freight train to Montgomery, Alabama several days later.

A grand jury in Davidson County, Tennessee, indicted Johnson and Lackey for: (1) killing an individual while perpetrating or attempting to perpetrate theft, in violation of TENN. CODE ANN. § 39-13-202; (2) intentionally, knowingly, or recklessly entering the home of the victim without his consent to commit theft, during which the victim suffered serious bodily injury, in violation of TENN. CODE ANN. § 39-14-404; and (3) theft of property valued at more than $1,000, in violation of TENN. CODE ANN. § 39-14-103.

Two weeks later, Johnson was arrested in Montgomery, Alabama, based on the Nashville warrant. While in custody there, he signed a waiver of his *Miranda* rights and confessed on videotape to the murder of Wiggins. When he was transferred to the Nashville Police Department, he again waived his *Miranda* rights and made the same confession, which was recorded on audio tape.

II

Before Johnson's trial, he was evaluated by a doctor to determine whether he was insane at the time of the offense and whether he was competent to stand trial. The doctor did not have any of Johnson's evaluations, prescription logs, or diagnoses from the hospitals where he had previously been admitted. The doctor wrote a one-page evaluation, stating that Johnson was competent to stand trial because he was able to understand the legal process and the potential consequences, and he could advise counsel and participate in his own defense.

Johnson's trial counsel then obtained Johnson's records from the various hospitals where Johnson had been admitted. She considered obtaining a second competency evaluation. However,

Johnson told her that he did not want such an evaluation. Johnson wrote her a letter to that effect, stating that he would no longer assist in his own defense because he wanted to put his faith in God.

Counsel tried to talk Johnson out of his belief, without success. She testified that she thought his actions unwise, but that she never considered Johnson incompetent or thought he had a viable insanity defense. She did not consider Johnson to be incompetent because Johnson had given her detailed information about the date of the offense. She therefore "decided to let [Johnson] make the decision as to what his defense would be," though she did not agree with his "strategy." As a result, a second competency evaluation was not performed.

At trial, Johnson was convicted of first-degree premeditated murder, felony murder, and theft of property over $500 but less that $1,000 in value. *State v. Johnson*, No. M2001-00330-CCA-R3-CD, 2003 WL 358251, at *1 (Tenn. Crim. App. Feb. 18, 2003). For the murder convictions, Johnson was sentenced to life in prison. For the theft conviction, he was sentenced to two years of imprisonment, to be served concurrently.

On direct appeal, Johnson challenged the sufficiency of the evidence against him, the trial court's denial of his motion to suppress his confessions, and the prosecutor's alleged misstatement of facts during closing argument. The Tennessee Court of Criminal Appeals affirmed his conviction. *Id.* at *11. The Tennessee Supreme Court denied leave to appeal on September 2, 2003. *Id.* at *1. Blair informed Johnson of post-conviction remedies available to him, but Johnson told her that he did not want to pursue them.

On February 9, 2006, Johnson filed a petition for a writ of habeas corpus in the Circuit Court of Hardeman County, Tennessee, alleging that his conviction and sentence were void. A Tennessee

state court can grant habeas relief only if "it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired." *Hickman v. State*, 153 S.W.3d 16, 20 (Tenn. 2004) (internal quotation marks and alterations omitted). In summarily dismissing Johnson's petition, the court stated that Johnson's sentence had not expired and that the court had jurisdiction to sentence him; therefore state habeas relief was not appropriate.

Habeas was not the correct avenue for Johnson to pursue in challenging his conviction. "Recognizing the narrow scope of habeas corpus relief, in 1967 the Tennessee General Assembly enacted the Post-Conviction Procedures Act." *Hickman*, 153 S.W.3d at 20. Under the Post-Conviction Act, post-conviction petitioners "may challenge convictions or sentences that are either void or voidable because of the abridgement of constitutional rights." *Ibid.* (citing TENN. CODE ANN. § 40-30-103 (2003)). Post-conviction relief would have been the correct vehicle for Johnson to use to argue mental incompetency or ineffective assistance of counsel—the claims that, because he did not raise them in a state post-conviction setting, now may be procedurally defaulted. However, he did not file a petition for post-conviction relief.

A one-year statute of limitations applies to petitions for post-conviction relief in Tennessee. A person in custody must file his petition within one year of the "date of the final action of the highest state appellate court to which an appeal is taken." TENN. CODE ANN. § 40-30-102. Johnson's petition to appeal to the Tennessee Supreme Court was denied on September 2, 2003. The statute of limitations for Johnson's post-conviction relief expired on September 3, 2004.

However, Johnson could have filed a petition for post-conviction relief despite his tardiness. The Tennessee Supreme Court has held that mental incompetence can toll the post-conviction statute of limitations. *State v. Nix*, 40 S.W.3d 459, 462–63 (Tenn. 2001) (citing *Seals v. State*, 23 S.W.3d 272, 277–79 (Tenn. 2000) (reasoning that the application of the one-year statute of limitations could violate the due-process rights afforded by the Tennessee Constitution to mentally incompetent prisoners by preventing them from having a "reasonable opportunity to raise a claim in a meaningful time and manner."). The Tennessee Supreme Court defines "mentally incompetent" as being "unable either to manage his personal affairs or to understand his legal rights and liabilities." *Id.* at 463.[1] Therefore, if Johnson proved that he had been mentally incompetent, the Tennessee courts could toll the statute of limitations.

Instead, on April 20, 2006, six days after his state habeas petition was denied, Johnson filed a federal habeas petition, pro se. He later filed an amended petition with the help of counsel. He asserted six claims—only one, ineffective assistance of trial counsel, is pursued in this appeal.

Johnson's federal habeas petition was time-barred. The federal habeas statute requires that a federal habeas action must be filed within one year after the state proceedings are final. 28 U.S.C.

---

[1]To make a prima facie showing of mental incompetence, a prisoner must include in his petition "specific factual allegations" of his incompetence. *Nix*, 40 S.W.3d at 464. This prima facie showing may be satisfied by "attaching to the petition affidavits, depositions, medical reports, or other credible evidence . . . . While affidavits and depositions of mental health professionals may be utilized, *they are not essential*, and a petitioner may rely upon affidavits and depositions from family members, prison officials, attorneys, or any other person . . . ." *Dunn v. State*, No. E2003-00002-CCA-R3-PC, 2003 WL 22888914, at *2 (Tenn. Crim. App. Dec. 8, 2003) (emphasis added). Therefore, a petitioner need not provide an expert opinion or diagnosis to make out a prima facie case of mental incompetence.

§ 2244(d)(1). The state proceedings are final when the period during which a defendant could petition the Supreme Court for a writ of certiorari expires. *Clay v. United States*, 537 U.S. 522, 525 (2003). Johnson's period to apply for certiorari expired on December 1, 2003. Therefore, the statute of limitations to file a federal habeas petition expired on December 1, 2004.

Johnson argued, however, that the statute of limitations should be tolled because he was mentally incapable of filing during the appropriate time. The district court conducted an evidentiary hearing on this issue and determined that Johnson was eligible for equitable tolling on his federal claim. The court stated that Johnson had a history of mental illness, and that during trial he committed himself completely to Christianity and "belie[ved] that he would be punished by God if he pursued the defense of his legal rights." The power of his belief, the court decided, was equivalent to Johnson having "a gun held to his head," and meant that Johnson's failure to file a habeas petition "unavoidably arose from circumstances beyond [his] control." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (internal quotation marks omitted).

The district court then looked to the merits of Johnson's claims. The court determined that four of Johnson's claims were meritless—these are not at issue on appeal. Two claims remained. First, Johnson argued that his trial counsel had been ineffective because she failed to move for a second competency hearing and because she failed to object to certain allegedly false and prejudicial remarks that the prosecutor made during closing arguments. Second, he argued that he had been incompetent to stand trial. The district court determined that these claims had been procedurally defaulted, because Johnson had not presented them to a state court. The court issued a certificate of appealability for all of Johnson's claims.

Johnson filed this timely appeal. He only raises the issue ineffective assistance of counsel, arguing that the district court erred when it determined that the issue were procedurally defaulted.

II

The federal habeas statute requires that any claims raised by a petitioner be exhausted—that they have been presented to a state court. 28 U.S.C. § 2254(b)(1). When a "petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims . . . and frustrates the State's ability to honor his constitutional rights." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotation marks omitted). If a prisoner does not exhaust his claims, the claims are defaulted, unless either there is an "absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

Johnson did not present his claim of ineffective assistance of counsel to a state court. Therefore, Johnson's claims are defaulted, unless he showed that Tennessee does not have an available corrective process or that circumstances make Tennessee's process ineffective to protect his rights.

Johnson first argues that the Tennessee post-conviction process was ineffective to protect his rights because the state would not pay for an expert to assist in his claims. If "circumstances render[] the State corrective process ineffective to protect a prisoner's rights, habeas corpus relief may be granted without requiring a futile exhaustion of remedies." *Lucas v. People of State of Mich.*, 420

F.2d 259, 261 (6th Cir. 1970). In such a situation, we "dispose of the appeal on its merits." *Id.* at 262.

Johnson is correct—and was correct below— that the Tennessee post-conviction court would not have provided him with an expert. Tennessee courts do not provide experts to noncapital offenders at state post-conviction hearings. *Davis v. State*, 912 S.W.2d 689, 695–96 (Tenn. 1995) (holding that there is no constitutional right to this kind of assistance).[2] However, the fact that Tennessee would have refused to provide an expert does not make the state process ineffective.

It is not unconstitutional for a state to refuse to provide counsel at post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The Supreme Court has held that the "'duty of the State . . . is not to duplicate the legal arsenal that may be privately retained . . . but only to assure the indigent defendant an *adequate* opportunity to present his claims fairly.'" *Id.* at 556 (quoting *Ross v. Moffitt*, 417 U.S. 600, 616 (1974)) (emphasis added).

A number of courts have similarly held that it is not unconstitutional for a state to refuse to provide an expert or psychiatrist to a prisoner in a post-conviction proceeding. *Hodges v. Bell*, 548 F. Supp. 2d 485, 500 (M.D. Tenn. 2008); *Willis v. Zant*, 720 F.2d 1212, 1215 n.5 (11th Cir. 1983); *Orbe v. True*, 233 F. Supp. 2d 749, 787–89 (E.D.Va. 2002); *Davis*, 912 S.W.2d at 695–96;

---

[2]The district court held that Tennessee would pay for an expert in a noncapital post-conviction proceeding, citing *Steele v. State*, No. 03C01-9701-CR-00012, 1999 WL 512053, at *12 (Tenn. Crim. App. July 21, 1999). On appeal, the state pushes the same point, also citing to *Steele*. However, *Steele* dealt with the right to have the state pay for an expert in a non-capital case *at trial*. *See ibid.* (citing *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985)). The case is distinguishable from *Davis*, which deals with the right to an expert in a non-capital *post-conviction* proceeding.

*Commonwealth v. Howard*, 719 A.2d 233, 241–42 (Pa. 1998); *Gardner v. Holden*, 888 P.2d 608, 622–23 (Utah 1994). In *Orbe*, the court distinguished the state's refusal to provide a psychiatrist from a refusal to provide access to post-conviction hearings for prisoners who could not afford the docket fee, which was held unconstitutional in *Smith v. Bennett*, 365 U.S. 708 (1961); or failure to provide trial transcripts to indigent prisoners in post-conviction proceedings, which was held unconstitutional in *Lane v. Brown*, 372 U.S. 477 (1963), and *Long v. Dist. Court of Iowa*, 385 U.S. 192 (1966) (per curiam). Equality of access, the court reasoned, is not denied by the refusal to provide a psychiatrist, just as it is not denied by refusing to appoint counsel. *Orbe*, 233 F. Supp. 2d at 788. The *Orbe* court distinguished Orbe's case from *Smith*, *Lane*, and *Long* by noting that the state's refusal to appoint a psychiatrist did not deny Orbe *access* to post-conviction process.

Here, similar to *Orbe*, Johnson was not denied access to the post-conviction proceeding by the state's refusal to pay for an expert. Johnson was fully capable of presenting his mental-incompetence and ineffective-assistance-of-counsel claim to the post-conviction court. Johnson argues that presenting his claims to the state post-conviction court would have been futile because he needed an expert to "provide evidence critical to proving his [competency]." Instead, the equitable-tolling test used in Tennessee post-conviction proceedings demonstrates that the state provides for the determination of mental incompetency without the necessity of an expert. The petitioner can prove mental incompetency for tolling by the use of affidavits from a variety of sources. Johnson does not address in his brief why this process should be deemed "ineffective." We hold that Tennessee's post-conviction process in non-capital cases is not ineffective within the

meaning of federal habeas corpus law merely because it does not provide a petitioner with a state-paid expert.

Alternatively, Johnson might have avoided procedural default if he had shown "cause for the default and prejudice arising from the default." *Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80 (1977)). Johnson has not proffered any cause for the default other than his belief that the state process was ineffective because the state would not provide him with an expert. He therefore cannot show that an "objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Johnson could have made a viable claim regarding counsel's failure to investigate and present evidence of Johnson's mental illness without expert testimony. The record shows that Johnson's counsel possessed information—Johnson's hospital records, for example—that might have led an effective attorney to move for a second competency hearing, or from which an argument could be made that Johnson was incompetent to stand trial. Johnson has thus failed to show adequate cause for his default.

The district court was incorrect when it held that Tennessee provides non-capital prisoners with experts at post-conviction proceedings. Nevertheless, "[a] decision below must be affirmed if correct for any reason, including a reason not considered by the lower court." *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985). Johnson procedurally defaulted his claims when he failed to raise them before the state post-conviction court because he failed to

show any reason why state process would have been ineffective or cause and prejudice for failing

to raise his claim.

III

For the foregoing reasons, we AFFIRM the district court's denial of Johnson's writ of habeas

corpus.