**Reginald JONES, Petitioner–Appellant,**

v.

**J.O. DAVIS, Warden,
Respondent–Appellee.**

No. 86–7145.

United States Court of Appeals,
Eleventh Circuit.

Jan. 15, 1988.

George Huddleston, Huddleston, Powell & Quinley, Daphne, Ala., for petitioner-appellant.

Charles A. Graddick, Atty. Gen., Mary Ellen Fike Forehand, Martha Gail Ingram, Asst. Attys. Gen., Montgomery, Ala., for respondent-appellee.

Before TJOFLAT and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Reginald Jones appeals the denial of his petition for a writ of habeas corpus by the United States District Court for the Southern District of Alabama. For the reasons stated below, we reverse.

In September 1983, Jones, a black male, was indicted by a grand jury in Mobile County, Alabama for burglary in the third degree. During the selection of a jury for the trial of the case, the Assistant District Attorney of Mobile County, Alabama used seven of his nine peremptory strikes to excuse all blacks from the jury venire. Objecting to this tactic, Jones moved for a mistrial. The motion was denied, but the trial court granted Jones leave to proceed, at a subsequent evidentiary hearing, on this point. Jones was tried and convicted by an all-white jury. He was sentenced to life imprisonment in accordance with Alabama's habitual offender statute.[1]

Following the imposition of sentence, Jones filed a motion for a new trial alleging in part that the state's purposeful, deliberate and systematic use of its peremptory challenges to strike all blacks from his venire violated his constitutional rights. An evidentiary hearing was held during which seven local criminal defense attorneys testified in support of the motion. Each expressed a belief that it was the practice of the district attorney's office to exclude blacks from the jury service. The Assistant District Attorney who prosecuted the case also testified, denying the existence of any such pattern or policy of exclusion and justifying the use of his peremptory strikes in Jones' case by stating that "I didn't like the looks of those seven people and that's why I struck them." The trial court denied the motion for a new trial.

Jones appealed his conviction to the Alabama Court of Criminal Appeals, alleging as one ground for reversal that the trial court erred in denying the motion for a new trial based on the state's use of its peremptory challenges. The conviction was affirmed without opinion, rehearing was denied and on October 19, 1984, the Supreme Court of Alabama denied Jones' petition for a writ of certiorari.

Having exhausted his state remedies, Jones then filed the present petition for habeas corpus in the United States District Court for the Southern District of Alabama, pursuant to 28 U.S.C. § 2254 (1976), alleging that his "conviction violates the constitution or laws of the United States ... [because] [m]embers of the black minority were excluded by means of the prosecuting attorney using seven of his nine strikes to excuse all seven of the prospective black jurors." (Habeas Corpus Complaint, filed June 21, 1985, ¶ 10(a)(1)). Adopting the recommendation of the magistrate, the district court denied Jones' petition. This appeal followed.[2]

In denying Jones' petition for habeas corpus relief, the district court relied exclusively on the Supreme Court's opinion in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Swain was a black defendant convicted by an all-white jury of the rape of a white female. Relying on the Fourteenth Amendment's Equal Protection Clause, Swain challenged the

---

1. Ala. Code § 13A-5-9 (1982).

2. In his habeas complaint Jones also attacked the sufficiency of the evidence. The district court also rejected this ground for relief. This issue is not before us on appeal.

prosecutor's use of peremptory strikes to exclude all black people from the petit jury. The Supreme Court refused to allow a challenge to the exclusion of blacks from a jury in any particular case, and stated that equal protection concerns would only be implicated if a pattern of systematic exclusion could be established.

Although widely criticized,[3] *Swain* remained the final word on peremptory challenges until the Supreme Court's recent decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson*, the Supreme Court held that a defendant could establish a prima facie case of an equal protection violation solely on the basis of proof regarding the prosecutor's action in his/her trial. According to the Court, a prima facie case is established if the defendant proves (1) that she/he is a member of a cognizable racial group; (2) that the prosecutor used peremptory strikes to remove members of the defendant's race from the venire; and (3) that an inference may be found that the venirepersons were removed because of race.

The Supreme Court rendered its decision in *Batson* on April 20, 1986, approximately two months after the district court denied Jones' petition for habeas corpus relief and a little more than a year after the expiration of the time for filing a petition for a writ of certiorari to the United States Supreme Court.[4] On appeal, Jones seeks a retroactive application of *Batson*. This remedy, however, is clearly barred by the Supreme Court's subsequent opinion in *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). In *Allen*, the Court held that *Batson* is not to be applied retroactively on collateral review of convictions which have become "final" prior to the announcement of the *Batson* decision. The Court defined "final" as meaning " 'where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in' *Batson.*" *Allen*, 478 U.S. at —— n. 1, 106 S.Ct. at 2880, n. 1. Clearly, Jones' conviction became final prior to the court's announcement of *Batson*. Any reliance on *Batson* is, therefore, without merit. Instead, Jones' claim must be reviewed under the standard articulated in *Swain.*[5]

---

**3.** See e.g., Ashby, *Juror Selection and the Sixth Amendment Right to an Impartial Jury*, 11 Creighton L.Rev. 1137, 1161 (1978); Brown, McGuire & Winters, *The Peremptory Challenge as a Manipulative Device in Criminal Trials: Traditional Use or Abuse*, 14 New Eng.L.Rev. 192 (1978) (advocating abolition of peremptories for prosecution absent other steps to prevent abusive exclusion of minorities from juries); Kuhn, *Jury Discrimination: The Next Phase*, 41 S.Cal.L.Rev. 235, 289 (1968); Massaro, *Peremptories or Peers:—Rethinking Sixth Amendment Doctrines, Images and Procedures*, 64 N.C.L.Rev. 501 (1986) (rejecting equal protection analysis and advocating use of Sixth Amendment); Note, *The Jury: A Reflection of the Prejudices of the Community*, 20 Hastings L.J. 1417 (1969); Comment, *Swain v. Alabama: A Constitutional Blueprint for the Perpetuation of the All–White Jury*, 52 Va.L.Rev. 1157 (1966); Note, *Peremptory Challenge—Systematic Exclusion of Prospective Jurors on the Basis of Race*, 39 Miss.L.J. 157, 159–60 (1967); Note, *Limiting the Peremptory Challenge: Representation of Groups on Petit Juries*, 86 Yale L.J. 1715 (1977); Note, *Fair Jury Selection Procedures*, 75 Yale L.J. 322 (1965); *Recent Development, Racial Discrimination in Jury Selection—Limiting the Prosecutor's Right of Peremptory Challenge to Prevent a Systematic Exclusion of Blacks from Criminal Trial Juries*, 41 Alb.L.Rev. 623 (1977) (advocating use of Sixth Amendment analysis to require government either to show that peremptory was not exercised because of defendant's race or to articulate a nonracial reason for exercise of peremptory challenge of black venirepersons).

**4.** The Alabama Supreme Court denied Jones' petition for a writ of certiorari on October 19, 1984. Jones then had ninety days to file for certiorari with the Supreme Court. U.S. S.Ct. Rule 10, 28 U.S.C.

**5.** In *Lindsey v. Smith*, 820 F.2d 1137 (11th Cir. 1987), this court held that a defendant cannot escape the preclusive effect of *Allen v. Hardy*, supra, merely by substituting a Sixth Amendment label on the claim. *Lindsey* precludes any application in this case of a Sixth Amendment analysis freed from the restraints of *Swain*. But see *Booker v. Jabe*, 775 F.2d 762 (6th Cir. 1985), *vacated*, —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 *reinstated on remand*, 801 F.2d 871 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *McCray v. Abrams*, 750 F.2d 1113 (2d Cir.1984), *vacated*, —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986); *United States v. Hardiman*, 656 F.Supp. 1006 (N.D.Ill.1987).

■ *Swain* established that the "presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court." 380 U.S. at 222, 85 S.Ct. at 837. This presumption cannot be rebutted by the allegation that *in the particular case at hand* the prosecutor struck all the blacks on the venire or even that he struck all the blacks on a venire *because* they were black. Rather, the presumption in favor of the prosecutor may be rebutted, according to *Swain*, by showing a systematic striking of blacks from the jury venire in "case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be." 380 U.S. at 223, 85 S.Ct. at 837. Such a showing, the *Swain* Court reasoned, could be sufficient to establish a "prima facie case" that the prosecutor was using the peremptory system "to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population," *id* at 224, 85 S.Ct. at 838, in violation of the Fourteenth Amendment.

In *Willis v. Zant,* 720 F.2d 1212, 1220 (11th Cir.1983), we set forth the method by which a petitioner may make out a prima facie case under the *Swain* standard and thus overcome the presumption that the prosecutor acted within the confines of the Fourteenth Amendment equal protection clause.

> At his evidentiary hearing, petitioner must prove on specific facts [18] that [the prosecutor] had a systematic *and intentional* practice of excluding blacks from traverse juries in criminal trials through the exercise of peremptory challenges, and that this practice continued unabated in petitioner's trial. The exclusion must have occurred 'in case after case, whatever the circumstances, whatever the crime and whoever the defendant may be.' *Swain*, 380 U.S. at 223 [85 S.Ct. at 837]. Petitioner is not required to show that the prosecutor *always* struck *every* black venireman offered to him, [*United States v. Pearson*, 448 F.2d 1207, 1217 (5th Cir.1971)], but the facts must manifestly show an intent on the part of the prosecutor to disenfranchise blacks from traverse juries in criminal trials in his circuit, "to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population." *Swain*, 380 U.S. at 224 [85 S.Ct. at 838]. The prosecutor's use of peremptory challenges in only a few trials is clearly insufficient to state a prima facie case [footnote omitted], as would be a pattern of exclusion which occurred for only a few weeks. In short, petitioner must marshal enough historical proof to overcome the presumption of propriety in which *Swain* clothes peremptory challenges, and thereby show [the prosecutor's] intent to discriminate invidiously.

> [18] This proof could be direct evidence such as testimony, or indirect evidence such as statistical proof. Mere allegations are insufficient. (citations omitted).

720 F.2d at 1220 (emphasis in original).

■ We believe that Jones has met this initial burden. At his evidentiary hearing in state court, Jones presented the testimony of six criminal attorneys practicing in Mobile whose experience spanned two and one-half years to fourteen years. All of them testified to having observed a pattern and practice on the part of the district attorney's office to use their peremptory challenges systematically to strike blacks from the jury venire. In support of their observations of the practice or pattern, almost all of them testified about specific cases in which they had observed the prosecutor systematically using his peremptory challenges to eliminate black venirepersons, often even before the prosecutor had questioned them. Each of the attorneys testified that the behavior by the prosecutor had been so obvious to them that they had all made their objections a part of the record in some of the cases they had tried.

Robert Clark, who had practiced law in Mobile for fourteen years, recalled many specific examples of the prosecutor striking black jurors, some of which had prompted him to object. Clark also testified to having noticed a pervasive pattern of exclusion of blacks by the prosecutor's office:

Defense Attorney: [W]hat pattern have you noticed?

Clark: A systematic exclusion of blacks not only in where black males are defendants but a systematic exclusion of blacks from jury service. They use their peremptory challenges for the systematic exclusion of blacks.

Defense Attorney: Just from any criminal trial?

Clark: Yes, sir.

Clark testified that his observations were confirmed by a consensus of the members of the Mobile criminal defense bar. Clark recalled the names of five specific cases in which he had raised objections to the fact that peremptory challenges were used by the prosecutor "to exclude blacks totally from at least five venires." In addition, Clark recalled a sixth case he had tried against McGregor, the same prosecutor as in this case, in which McGregor had used all his peremptories to strike blacks from the venire.

Jeff Deen, an attorney who had practiced in Mobile for six years, and participated in about 150 cases, also testified to observation of this pattern. Deen testified that this observation had prompted him not only to object, but recently to begin a statistical study of all the cases he tried. He had, at the time he testified, completed statistical studies of two cases and in those cases the prosecutor had used all his peremptories to strike blacks on the venire, some of whom the prosecutor had not even questioned. Perhaps even more significantly, Deen had worked as an attorney in the district attorney's office and he testified that in the course of his employment there one of the lawyers in the office told him, "You're a fool to leave a young black male on a jury."

Lee Stamp had practiced in Mobile for two and one-half years and stated that he had been familiar with about twenty-four cases in that period. He testified to having observed a pattern, whereby this prosecutor's office would first strike all blacks and then any Asian or Hispanic person. He could testify with full recall about three specific cases in which the prosecutor used his peremptories to strike all blacks from the venire. Stamp testified that he had objected to this practice several times.

Roosevelt Simmons, a Mobile attorney of two and one-half years, with knowledge of about twenty-five cases, testified to this pattern, testified to having objected to it at least five or six times, and testified that as a member of the Bay Area Bar Association (an association of black attorneys) he was participating in a project designed "to observe and research the practice of the District Attorney's office in excluding blacks from the jury."

Major Madison, an attorney with over two years experience testified to having observed this pattern, in his own practice (four or five criminal trials in the last two years), and to having discussed it with many other members of the local bar who had also observed the pattern. Madison mentioned specifically his last trial in which the prosecutor was McGregor. McGregor had used his peremptories to strike all but one black person from the venire.

Steve Orso, also with about two and one-half years experience, testified that he had, in the course of thirty to forty-five trials, noticed a prosecutorial pattern of striking all blacks from the venire, that he began objecting to this practice, and that thereafter he observed that in the last three or four cases he tried the prosecutor struck all but one of the blacks on the venire.

The state adduced no evidence to cast doubt upon the existence of such a pattern.[6] In fact, the prosecutor's testimony

---

**6.** The district attorney's cross-examination of each witness focused essentially on two points; first, that each witness had only observed a specific number of cases; and, second that no witness could "state under oath unequivocably that in every case [the witness had] tried or observed the District Attorney's office has used all of its peremptory challenges against blacks." Neither of these two points is sufficient under *Willis.* "Petitioner is not required to show that the prosecutor *always* struck *every* black venireman offered to him.... The prosecutor's use of peremptory challenges in only a few·trials is clearly insufficient to state a prima facie case, (footnote omitted) as would be a pattern of exclusion which occurred for only a few weeks." 720 F.2d at 1220. Here, Jones' case suffers from neither of those deficiencies.

raised at least an inference that the jurors in this case were struck on the basis of *race.*[7] Jones' attorney offered twice to present more testimony of the kind described above but the trial judge discouraged him by stating, "[d]on't you think we've had enough," and by suggesting that further evidence would be cumulative.

Although a stronger case could have been established by researching the court records to prove statistically the observations of the six witnesses, statistical evidence is not necessary. *Willis v. Zant,* 720 F.2d at 1220 n. 18. Moreover, the state's evidence virtually made no challenge to the existence of such a pattern. In light of the substantial evidence adduced by Jones at the state evidentiary hearing, in light of the restriction upon his presentation of additional evidence, and in light of the prosecutor's apparent belief that he need not adduce rebuttal evidence, we remand this case to the district court for an evidentiary hearing to be conducted pursuant to the guidelines established in *Willis v. Zant, supra.*

**REVERSED and REMANDED.**

None of his witnesses had practiced less than two and one-half years and two had practiced much longer. The total number of cases the witnesses had collectively observed was substantial. Each witness stated that *all* or *almost all* blacks were struck from the venire panel in *every* case they recalled.

The state presented no witnesses of its own except for McGregor, the assistant district attorney who had prosecuted Jones and who had been with the district attorney's office only four or five months. McGregor's testimony was a conclusory statement that he was unaware of any policy to systematically strike blacks. In addition, he testified that in ten of the twelve cases he had tried he had "not used my strikes to strike all blacks off the jury." Thus, he conceded that he did strike *all* blacks off the jury in two of his cases. Moreover, McGregor's testimony as a whole leaves a strong impression that

he struck most blacks in the other cases. Other witnesses' testimony indicated that McGregor often struck all the blacks but one.

7. After listing several reasons why he might typically strike a black juror—*e.g.,* not gainfully employed or not a family man—the prosecutor, McGregor, was asked whether the seven blacks he struck from the just completed Jones trial fit those categories. McGregor acknowledged they may not have, stating that he struck those seven jurors because he did not like their looks. Under these circumstances, McGregor's stated reason for striking the jurors in this case entails a reasonable inference that they were struck on the basis of race. Although McGregor also testified in conclusory fashion that he was unaware of any policy to systematically strike blacks, *Willis* holds that such conclusory testimony is insufficient.