**Jimmy Louis LOVE,**
**Petitioner–Appellant,**

v.

**Charlie JONES, Warden; Attorney**
**General for the State of Alabama,**
**Respondent–Appellee.**

**No. 90–7330.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 8, 1991.

Gerald L. Miller, Redden, Mills & Clark, Birmingham, Ala., for petitioner-appellant.

Fred F. Bell, Atty. General's Office, Montgomery, Ala., for respondent-appellee.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and PECK *, Senior Circuit Judge.

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designa-

DUBINA, Circuit Judge:

The petitioner, Jimmy Louis Love ("Love"), is presently serving a sentence of life without parole pursuant to Alabama's Habitual Felony Offender Act, Ala.Code § 13A–5–9 (1975) ("HFOA"). Love appeals the district court's denial of his petition for writ of habeas corpus. For the reasons that follow, we reverse the district court and remand for a grant of the writ.

## I. FACTUAL BACKGROUND

Love was indicted for participation in a robbery which occurred on March 1, 1983, at the Elks Club in Huntsville, Alabama. According to witnesses, while a man with a rifle wrestled with the club's doorman, another man entered the room holding a revolver. Love entered with a sawed-off shotgun and ordered the victims to take off their clothes. The three armed men then proceeded to rob those present in the club. Two of the victims knew Love and the man with the revolver, James Carl Sledge ("Sledge"). Love admitted being at the Elks Club that night with Sledge, but claimed that his participation in the robbery was under duress at Sledge's direction. Love also admitted that he had smoked marijuana and consumed several beers that night.

The prosecutor, Timothy Morgan ("Morgan") offered Love a plea bargain in October 1983 of life with the possibility of parole if he would plead guilty to a burglary charge also pending against him, with dismissal of all other pending charges. Shortly before trial, Morgan offered a similar plea bargain with a thirty-year sentence. Love refused, opting for a jury trial.

Love is a black man. There were approximately 34 persons on the jury venire for his trial, one of whom was his aunt, who was excused for cause. Morgan used his peremptory strikes to remove all of the remaining black members of the venire. Love was convicted on February 29, 1984, on four counts of first degree robbery in the Circuit Court of Madison County, Ala-

tion.

bama, and was sentenced to life imprisonment without parole pursuant to the HFOA.[1]

Although Love and Sledge were indicted at the same time, Sledge was not arrested until 1987. He pled guilty to receiving stolen property and received a ten-year split sentence.

## II. PROCEDURAL HISTORY

Love filed a pro se petition for writ of habeas corpus on May 14, 1987, in the United States District Court for the Northern District of Alabama. After determining that Love had exhausted his state remedies, the United States magistrate appointed counsel to represent him and directed counsel to amend the petition if necessary. An amended petition was filed and discovery conducted. The magistrate held an evidentiary hearing on February 23 and March 9, 1989. On March 28, 1990, the magistrate filed a report and recommendation recommending that Love's petition should be granted based upon his claim of the systematic exclusion of blacks from the jury, but denying relief on the remaining grounds. The district court rejected the magistrate's recommendation with respect to the exclusion of blacks from the jury, but adopted it as to all other issues. The district court entered judgment on May 1, 1990, denying Love's petition for writ of habeas corpus. Love then perfected his appeal to this court.

## III. DISCUSSION

 The dispositive issue presented on appeal is whether Morgan's use of his peremptory strikes to exclude all blacks from

Love's jury is violative of the standard announced in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), *overruled, Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[2] Under *Swain*, a prosecutor's use of peremptory challenges to exclude blacks from a jury violates the equal protection clause of the fourteenth amendment only where a systematic striking of blacks from the jury venire can be shown in "case after case, whatever the circumstance, whatever the crime and whoever the defendant or the victim may be." 380 U.S. at 223, 85 S.Ct. at 837. A habeas petitioner may prove a prima facie case under *Swain* by demonstrating through direct or indirect evidence, such as testimony or statistical proof, that the prosecutor had a systematic and intentional practice of excluding blacks from petit juries in criminal trials through the exercise of peremptory challenges, and that this practice continued unabated in the petitioner's trial. *Willis v. Zant*, 720 F.2d 1212, 1220 (11th Cir.1983) (per curiam), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 851 (1984). *See also Jones v. Davis*, 835 F.2d 835, 838 (11th Cir.), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988) (*"Jones I"*). A petitioner is not required to show that the prosecution always struck every black, but must show an obvious intent on the part of the prosecutor to disenfranchise blacks from petit juries in criminal trials in his or her circuit. *Willis*, 720 F.2d at 1220. The use of peremptory challenges in only a few trials is insufficient, as is a pattern of exclusion of only a few weeks. *Id.*

 Love presented the testimony of three lawyers at the evidentiary hearing

---

**1.** Love's counsel did not object at trial to the prosecutor's striking all blacks from the jury. Upon review of Love's petition for writ of error coram nobis, however, the Alabama Court of Criminal Appeals addressed the merits of Love's claim that the prosecutor's actions violated *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). *See Love v. State*, 507 So.2d 976, 978 (Ala.Crim.App.1986). Because the state court did not rely on procedural grounds in ruling on Love's petition, our review of Love's *Swain* claim is not barred. Even if a procedural rule could have barred appellate review, a federal court is free to review the merits of a

claim unless the state refused review based on the procedural rule. *Stacey v. Warden, Apalachee Correctional Institution*, 854 F.2d 401, 405 (11th Cir.1988).

**2.** Because Love's conviction became final on November 30, 1984, when the Alabama Supreme Court denied certiorari on direct appeal, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) does not apply to this case. Instead, *Swain v. Alabama* governs. *See Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986).

conducted by the magistrate. Love's trial counsel, Thomas Ryan ("Ryan"), testified that in addition to Love's aunt, there were at least three other blacks on the venire for Love's trial.[3] When asked if he thought the black veniremen were struck from Love's case because of their race, he stated that he could only speculate about that. Ryan also testified that he had a general perception that the district attorney's office in Madison County struck blacks disproportionately and tried to get rid of black jurors.

The other lawyers who testified for Love, Robert Shipman ("Shipman"), a former assistant district attorney who has practiced law for eighteen years, and Joe Lampley ("Lampley"), who has practiced law for five years, stated that they had observed a pattern on the part of the Madison County district attorney's office to systematically strike blacks from juries. Shipman, who has tried over a hundred criminal jury cases in Madison County, testified about three specific trials in which all blacks were struck by the state, one of which was prosecuted by Morgan. Lampley testified about seven specific trials, one of which was prosecuted by Morgan. All blacks were struck by the state in six, and all blacks but one were struck in the seventh. Shipman testified that when he worked as an assistant district attorney (1971–74), it was considered good policy to keep blacks off juries. He also stated that lawyers could count on the prosecutor's striking the blacks initially, and that in his opinion, it was the consensus of the criminal defense bar in Madison County that the prosecutors generally struck all the blacks first.

Love also presented evidence at the hearing from a 1983 trial in which Morgan had prosecuted him for theft of property. Morgan's jury selection notes from that trial indicated which jurors were black. Of 25 potential jurors, Morgan used his first five peremptory challenges to strike five blacks, struck a white juror with his sixth, and used his seventh to strike the last black on the venire.

Testifying in rebuttal, Morgan denied that there was any practice in the Madison County district attorney's office of excluding blacks from juries or that he had struck jurors because of their race. Morgan did not remember how many blacks were on the venire for Love's 1984 trial, could not find any notes for his jury selection in that trial, and could not state any reasons for using his peremptory challenges to strike all the blacks. He simply denied impermissible use of his peremptory strikes. Morgan also testified he did not remember why he struck any of the potential jurors in Love's 1983 trial.

The magistrate found the testimony of Shipman and Lampley credible, and held that Love had established a prima facie case pursuant to *Swain* of an equal protection violation based upon the prosecutor's systematic exclusion of blacks from Madison County juries. In rejecting the magistrate's recommendation, the district court stated that the habeas petitions in the cases upon which the magistrate relied, *Willis* and *Jones I*, were denied after hearings were held on remand, and concluded that Love had failed to establish a prima facie case of discrimination in the jury selection proceedings.

The existence of a *Swain* violation is a mixed question of law and fact which is subject to de novo review by this court. *Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980); *Martin v. Kemp*, 760 F.2d 1244, 1247 (11th Cir.1985).

Since the district court's decision, the *Jones* case has again been before this court. *Jones v. Davis*, 906 F.2d 552 (11th Cir.1990) (per curiam) ("*Jones II*"). In *Jones I*, we reversed the denial of Jones' petition for writ of habeas corpus, finding that Jones met his initial burden of making a prima facie case under *Swain* in the state court evidentiary hearing. 835 F.2d at 838. The case was remanded to allow Jones to present any further evidence he had without restriction and to allow the state the chance to rebut his prima facie case. *Id.* at 840. The magistrate conducted an eviden-

---

**3.** Love testified that he recalled seven black members of the venire.

tiary hearing on remand, but his recommendation stated that he understood that this court remained "unconvinced that petitioner proved a *prima facie* case under [Swain]." *Jones II,* 906 F.2d at 554 (interpolation in original). Based upon that misunderstanding, the magistrate then concluded that Jones did not make out a prima facie case under *Swain.* The district court adopted the recommendation and denied the writ. *Id.* at 554. In *Jones II,* we explained that the magistrate had misconstrued *Jones I,* reiterated our finding that Jones proved a prima facie case under *Swain,* and again reversed the denial of habeas relief. *Id.* at 554–55.[4]

We find that Love has met his burden of establishing a prima facie case pursuant to *Swain* of discrimination in the jury selection procedures in Madison County and at his trial. The lawyers who appeared on Love's behalf at the evidentiary hearing testified that they had observed a pattern and practice of intentional and systematic striking of blacks from jury venires by the Madison County district attorney's office. Also persuasive is the fact that Morgan not only struck the blacks from Love's 1984 trial, but used his peremptory strikes to remove all blacks from a previous jury which tried Love, a case in which his jury selection notes clearly indicated the race of the jurors. Although Love could have established a stronger case by offering statistical evidence from court records to reinforce the observations of his witnesses, statistical evidence is not required. *Jones I* at 840. Love has assembled sufficient historical proof to overcome the presumption of proper use of peremptory challenges pursuant to *Swain,* and has thereby shown the prosecutor's intent to discriminate invidiously and a pattern and practice of doing so.[5]

The state offered virtually no evidence challenging the existence of such a pattern and practice. The state could have rebutted Love's prima facie case by showing that the historical and systematic disparity resulted from racially neutral selection procedures or providing racially neutral reasons for all strikes of black veniremen in the petitioner's trial. *Willis,* 720 F.2d at 1220–21. The state has shown neither here. Mere affirmations of good faith or denials of discriminatory intent, the only evidence provided by Morgan, are insufficient to overcome a prima facie case of systematic exclusion. *Id.* at 1221. The prosecutor's testimony alone is not per se insufficient, but where a petitioner has established a prima facie case, testimony from the alleged discriminator should be judiciously scrutinized. *Id.* We find that the evidence in this case shows an obvious intent on the part of the Madison County district attorney's office to disenfranchise blacks from petit juries in criminal trials in that circuit, and that the state has failed to rebut Love's prima facie case.

Because we hold that Love's petition for writ of habeas corpus is due to be granted on the basis of a *Swain* violation, we need not address the other grounds for relief raised by his petition.[6]

The district court's denial of Love's petition for writ of habeas corpus is REVERSED, and the case is REMANDED to the district court with directions to grant the writ and order that Love be afforded a new trial.

---

**4.** On appeal after remand of the *Willis* case, this court affirmed the district court's denial of the writ of habeas corpus on the basis that the prosecutor's conduct did not rise to the level of a *Swain* violation. *Willis v. Kemp,* 838 F.2d 1510 (11th Cir.1988), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989).

**5.** We note that the testimony presented by Love regarding the jury selection practices of the dis-

trict attorney's office in Madison County is very similar to the testimony presented by the habeas petitioner regarding Mobile County in *Jones I* and *II.*

**6.** Love also claimed a faulty indictment, selective enforcement of the HFOA, and ineffective assistance of counsel.