**PUBLISH**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

-------------------------------------------

**No. 97-6998**

-------------------------------------------

**D. C. Docket No. 95-A-1035-N**

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
03/11/99
THOMAS K. KAHN
CLERK

**ROBERT LEE TARVER, JR.,**

Petitioner-Appellant,

versus

**JOE S. HOPPER, Commissioner,
Alabama Department of Corrections,
BILL PRYOR, The Attorney General of
the State of Alabama,**

Respondents-Appellees.

----------------------------------------------------------------

**Appeal from the United States District Court
for the Middle District of Alabama**

----------------------------------------------------------------

**(March 11, 1999)**

Before TJOFLAT, EDMONDSON and COX, Circuit Judges.

# EDMONDSON, Circuit Judge:

Robert Lee Tarver, Jr., using 28 U.S.C. § 2254, challenges his death sentence. We affirm the district court's denial of relief.

## BACKGROUND

Tarver, in 1985, was convicted of murdering Hugh Kite, the owner of Kite's Store. The State proved at trial that Tarver shot Kite three times behind the store and stole Kite's wallet. See Tarver v.

2

State, 500 So.2d 1232, 1235-36, 1239-41 (Ala. Crim. App. 1986).

The district court found that, in preparation for Tarver's trial, Tarver's lawyers "made a deliberate strategic decision to concentrate on preparing for the guilt phase of the Petitioner's trial based on his assessment of the likelihood of an acquittal [and] that the trial counsel dedicated substantial time to interviewing numerous community members and relatives of the Petitioner,

not only in an attempt to discover evidence of the Petitioner's innocence, but also in an attempt to prepare for the sentencing phase." The district court added "that there was substantial overlap in the trial counsel's preparation for the guilt and sentencing phases of the trial."

The parties continue to dispute whether, at the time of Tarver's trial, the prosecution had an agreement with Tarver's associate, Richardson, for favorable treatment in return for

Richardson's testimony. The state courts and the district court rejected Tarver's claim(s) based on this alleged agreement.

The jury found Tarver guilty and recommended life without parole. The Alabama trial court judge overrode the jury's recommendation and sentenced Tarver to death.

In 1986, the Supreme Court decided Batson v. Kentucky, 476 U.S. 79 (1986). About a month after the Supreme Court decided Batson, the Alabama Court of

Criminal Appeals affirmed Tarver's sentence and conviction on direct appeal. Tarver's petition for rehearing was denied, and the Alabama Supreme Court denied relief. Four days after the Alabama Supreme Court denied Tarver's petition for rehearing, the United States Supreme Court decided *Griffith v. Kentucky*, 479 U.S. 314 (1987), making *Batson* retroactive to all cases on direct appeal when *Batson* was decided.

Later, Tarver sought state collateral relief under Temporary Rule 20 (now, Rule 32) of the Alabama Rules of Criminal Procedure and raised, for the first time, a _Batson_ claim. After taking testimony, the Rule 20 judge rejected this claim and others, but he set aside Tarver's death sentence, ruling that Tarver's counsel was ineffective during the penalty phase. The Court of Criminal Appeals remanded the case to the trial court for written findings of fact and conclusions of law.

7

The trial court then said that, but for the procedural bar to the Batson claim, he also would find a Batson violation in Tarver's trial. The trial court repeated its decision on the ineffectiveness of Tarver's counsel. The Alabama Court of Criminal Appeals reversed the ineffectiveness decision, however, and ordered the trial court to reinstate the death penalty. The Alabama Supreme Court and the United States Supreme Court later denied discretionary review.

In 1995, Tarver filed a petition for writ of habeas corpus in federal district court. The case was referred to a Magistrate Judge. The Magistrate recommended denying Tarver's petition, and the District Judge agreed.

## DISCUSSION

On appeal, Tarver advances his Batson claim, raises ineffective assistance of counsel claims, and argues that the

9

prosecution breached its duty under *Giglio v. United States*, 405 U.S. 150 (1972). We will address each of Tarver's claims separately, giving facts found by state trial and appellate courts a presumption of correctness, as required by 28 U.S.C. § 2254(d). *See Mills v. Singletary*, 161 F.3d 1273, 1277 n.1 (11th Cir. 1998).

A. The *Batson* Claim

We review de novo Tarver's claim that his Batson claim is not procedurally defaulted. See Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). Tarver makes two arguments why we should hear his Batson claim. First, he says the federalism and comity concerns embodied by our respect for state procedural default rules do not apply in this context because Alabama courts could review Tarver's claim for plain error and because Alabama's Rule 20

courts had an opportunity to review Tarver's Batson claim.

"[T]he mere existence of a 'plain error' rule does not preclude a finding of procedural default," however. Julius v. Johnson, 840 F.2d 1533, 1546 (11th Cir. 1988). Likewise, state post-conviction proceedings do not preclude a finding of procedural default. Tarver's argument would allow federal review of procedurally defaulted claims in every state with state post-conviction proceedings. This result is

clearly against our precedent and practice.

See Sims v. Singletary, 155 F.3d 1297, 1311 (11th Cir. 1998) (we cannot review procedurally-defaulted claims absent a showing of "cause and prejudice" or "actual innocence").

Second, Tarver says we should decide his Batson claim because Alabama has not consistently applied the procedural default rule on Batson claims. He relies on our statement in Cochran v. Herring, 43 F.3d 1404, 1409 (11th Cir. 1995): "Alabama courts have not consistently applied a procedural

bar to Batson claims in cases like Cochran's." We think, however, that "cases like Cochran's" are cases where the defendant (like Cochran) made a Swain objection at trial.[1] Cochran distinguished Tarver, 629 So.2d at 18-19, on this ground. See Cochran, 43 F.3d at 1409. The Cochran court's later statement that Tarver

---

[1] Swain v. Alabama, 380 U.S. 202 (1965), was the predecessor to Batson. To prove a Swain violation, a defendant had to show a systematic exclusion of blacks from juries over time. See id. at 223; Love v. Jones, 923 F.2d 816, 819-20 (11th Cir. 1991).

"Suggest[s]" that the Alabama procedural default rule is applied inconsistently cannot sustain the weight Tarver places upon it, in the light of the panel's explicit statement that "Alabama courts have not consistently applied a procedural bar to Batson claims asserted in state collateral petitions where the defendant had raised a Swain objection at trial." Id. More important, the Cochran court was not faced with a case where no Swain objection was made at trial; and, therefore, they

could make no binding decision about such a case. See *New Port Largo, Inc. v. Monroe County*, 985 F.2d 1488, 1500 (11th Cir. 1993) (Edmondson, J., concurring), cited with approval in *Combs v. Plantation Patterns*, 106 F.3d 1519, 1533 (11th Cir. 1997).

We cannot say that Alabama courts have been inconsistent in applying the procedural default rule to cases, like Tarver's, that is, where no *Swain* objection was made at trial. Tarver cites to no case (and we can find none) in which an

Alabama court ignored the procedural bar and decided a _Batson_ claim when no _Swain_ objection was made at trial.[2]  _Batson_ claims not raised at trial have been procedurally defaulted. _See, e.g., Ross v. State,_ 581 So.2d 495, 496 (Ala. 1991) (citing cases);

---

[2]Tarver cites _Watkins v. State,_ 632 So.2d 555 (Ala. Crim. App. 1992), and cases cited by _Watkins,_ to say that "Alabama courts have not strictly or consistently applied the procedural default rule to _Batson_ claims." The pertinent cases are distinguishable because they all involved _Batson_ claims raised on direct appeal, and most involved plain error review.

*Bonner v. State*, 564 So.2d 99, 99 (Ala. Crim. App. 1990).

We also reject Tarver's argument that his case is like *Morrison v. Jones*, 952 F. Supp. 729 (M.D. Ala. 1996), and *Floyd v. State*, 571 So.2d 1234 (Ala. 1990). The petitioners in *Morrison* and *Floyd* both raised *Swain* objections at trial, dropped the claim on appeal, but got a review on the merits of their *Batson* claim. Tarver argues, according to *Smith v. Murray*, 477 U.S. 527 (1986), that the appellate defaults in

Morrison and Floyd are indistinguishable from his default "at the trial level." But Alabama can pick its own procedural rules and has done so here. For some reason (like the chance for trial courts to cure errors in the first instance) Alabama has chosen to allow Swain claims defaulted on appeal, but not those defaulted at trial, to proceed to collateral review on the merits if the case was on direct appeal when Batson was decided. Smith does not command — as Tarver says it does

command – that Alabama treat its trial and appellate defaults the same. Smith requires that we treat trial and appellate defaults equally, if Alabama does so. We cannot require Alabama to treat trial and appellate defaults the same when Alabama has not chosen to do so.[3]

---

[3] Tarver's argument that Griffith v. Kentucky, 479 U.S. 314 (1987), allows him to raise his Batson claim in post-conviction proceedings is foreclosed by Pitts v. Cook, 923 F.2d 1568, 1571 & n.3 (11th Cir. 1991). We decline his invitation to "revisit" Pitts.

B. The Ineffective Assistance of Counsel Claims

We review Tarver's ineffective assistance of counsel claims de novo. *See* Holsomback v. White, 133 F.3d 1382, 1385 (11th Cir. 1998).

Tarver argues that his trial counsel was constitutionally ineffective for failing to raise a *Batson*-type objection at trial. We have said, however, that a lawyer who failed to make a *Batson* challenge before

*Batson* did not provide ineffective assistance of counsel. See *Pitts*, 923 F.2d at 1574; see also *Poole v. United States*, 832 F.2d 561, 565 (11th Cir. 1987).

Tarver says three facts distinguish his case from *Pitts* and *Poole*, but we disagree. First, Tarver says his trial counsel knew of "the systematic use by the prosecutor of [per]emptories to exclude blacks from the jury." Our examination of the record, however, shows that Tarver's trial counsel never said that blacks were struck

"routinely" because of their race alone.
During state collateral proceedings,
Tarver's trial counsel's testimony was
that "on occasion," when he had been a
prosecutor, he had struck black
veniremembers based on race alone.[4]

---

[4]These facts distinguish Tarver's case from _Jackson v. Herring_, 42 F.3d 1350 (11th Cir. 1995). In _Jackson_, the petitioner introduced "overwhelming" evidence of a _Swain_ violation, including the prosecutor's testimony that there was widespread and systematic misuse of peremptory challenges by the State. _Id._ at 1359-60.

Second, Tarver says his trial counsel could give no tactical reason for his failure to object to the discriminatory use of peremptory challenges. This argument misses the point: to be effective, Tarver's lawyer did not need a reason because he was not obligated to have anticipated the *Batson* decision. See *Pitts*, 923 F.2d at 1573. Tarver might complain that his lawyer was unimaginative, but a lack of creativity does not constitute ineffective assistance. See *id.* at 1574. Futility also

justifies Tarver's lawyer's refusal to object because no evidence in this case would have supported a _Swain_ violation:[5] the only valid objection available at that time. See _Lindsey v. Smith_, 820 F.2d 1137, 1152 (11th Cir. 1987); See also _Reece v. United States_, 119 F.3d 1462, 1465 (11th Cir. 1997) (lawyer's failure to

---

[5]For reasons explained elsewhere, we are unpersuaded by the anecdotal evidence of two defense lawyers (who had practiced in Russell County) about the use of _Batson_-type challenges and by the practice of one prosecutor who struck jurors for race alone "on occasion," as evidence of a _Swain_ violation.

challenge kind of methamphetamine for sentencing was not prejudicial when evidence shows court used correct kind of methamphetamine).

Third, Tarver presents the testimony of two lawyers that lawyers in the community were at the pertinent time routinely raising _Batson_-type objections at trial. The Rule 20 court in this case, however, found that making a _Batson_-type challenge before _Batson_ was "not the normal generalized practice." And,

26

Alabama courts have said that failure to make a Batson challenge before Batson is not ineffective. See Horsley v. State, 527 So.2d 1355, 1357-58 (Ala. Crim. App. 1988).

Tarver says his trial lawyer was constitutionally ineffective by failing to prepare adequately for the sentencing phase. Tarver says his trial counsel should have devoted more time to preparation and should have presented additional witnesses in the penalty phase of the trial. We think, however, that Tarver's trial

lawyer provided the assistance of counsel required by the Constitution.

Tarver's trial lawyer testified that he consulted with a lawyer at the Southern Poverty Law Center about how to proceed with Tarver's case and concluded that focusing on Tarver's acquittal of the capital offense was the best approach to defending Tarver. He met with Tarver almost daily from the time he was appointed until the trial. And he testified

that either he, his co-counsel, or an investigator interviewed every witness Tarver thought would be helpful as mitigation witnesses, including Tarver's mother, grandmother, aunt, cousin, girlfriends, former employers, and members of the community. Tarver's lawyer said he presented every witness he thought would be helpful. Tarver's lawyer did present the testimony of Tarver's Uncle. Tarver's uncle said they were like brothers,

that Tarver was no troublemaker, and had no criminal "bent."[6] Tarver's lawyer also presented an expert to testify about Tarver's successful polygraph test result, a test in which Tarver denied killing Kite.

Tarver's lawyer's preparation for sentencing was, at least, within the broad range of reasonable performance we have recognized in other cases. See, e.g., Waters v. Thomas, 46 F.3d 1506, 1510-11 (11th Cir. 1995)

---

[6] This testimony was substantially refuted by Tarver's criminal record.

(en banc) (holding no ineffectiveness shown under the circumstances and saying we "have held counsel's performance to be constitutionally sufficient when no mitigating evidence at all was introduced"). Dobbs v. Kemp, 790 F.2d 1499 (11th Cir. 1986) (no ineffective assistance for failure to present mitigating evidence because counsel feared damaging counter evidence); Stanley v. Zant, 697 F.2d 955 (11th Cir. 1983) (no ineffective

assistance for talking only to defendant and defendant's mother and presenting no mitigating evidence). Tarver's lawyer's effectiveness at the sentencing stage is strongly evidenced by the jury's decision to recommend not death, but life without parole. We think Tarver's trial lawyer's efforts toward sentencing are constitutionally adequate. See Burger v. Kemp, 107 S. Ct. 3114, 3126 (1987) (lawyer not required to investigate and present all

available mitigating evidence to be reasonable).

Tarver relies on the fact that Tarver's lawyer only spent four hours on Tarver's case between the conviction and sentencing to argue that Tarver's lawyer did not adequately prepare for the sentencing stage. Like the district court, we believe this argument is "inaccurate and misleading," because of the overlap in preparation for the sentencing and

guilt/innocence stages of the trial. For example, Tarver's lawyer's meeting with the potential witnesses took place before sentencing.

The record shows that Tarver's lawyer tried to create sufficient residual doubt about Tarver's guilt during trial and sentencing to add, in reality, another mitigating factor to the jury's sentencing deliberations. That the creation of lingering doubt was part of the strategy of

Tarver's lawyer is evidenced by the polygraph examiner's testimony at sentencing and Tarver's lawyer's closing sentencing argument. The polygraph examiner testified that Tarver did not lie when asked, in different ways, if he killed Hugh Kite.[7] During Tarver's lawyer's

_____

[7] At the time of Tarver's trial, how a sentencing jury might consider residual doubt about the defendant's guilt had not been directly addressed by Alabama courts. At any rate, Tarver's lawyer was not unreasonable to believe that the use of evidence and argument linked to lingering doubt was sound strategy. Tarver's trial judge accepted that

closing argument at the sentencing

hearing he said repeatedly that he did not

want to "challenge the verdict." But he —

without drawing objection — added:

I would hope that the evidence

presented both in the case-in-chief

last week and anything that you

Tarver's lawyer could present the polygraph test results to the jury at sentencing.

The jury recommended against death. Although in Alabama the judge is the ultimate sentencer, the jury's recommendation must be considered, and having the jury on the side of life is bound to help a defendant some.

have heard today might be sufficient to raise in your mind at least a shadow of a doubt about the defendant's guilt, and if that doubt exists in your mind, I would pray that you would resolve it in favor of the defendant.

A lawyer's time and effort in preparing to defend his client in the guilt phase of a capital case continues to count

at the sentencing phase. Creating lingering doubt has been recognized as an effective strategy for avoiding the death penalty. We have written about it. _See, e.g., Stewart v. Dugger_, 877 F.2d 851, 855-56 (11th Cir. 1989). In addition, a comprehensive study on the opinions of jurors in capital cases concluded:

"Residual doubt" over the defendant's guilt is the most powerful "mitigating" fact.-[The

study] suggests that the best thing a capital defendant can do to improve his chances of receiving a life sentence has nothing to do with mitigating evidence strictly speaking. The best thing he can do, all else being equal, is to raise doubt about his guilt.

Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What do*

*Jurors Think?*, 98 Colum. L. Rev. 1538, 1563 (1998) (footnotes omitted); *See* William S. Geimer & Jonathan Amsterdam, *Why Jurors Vote Life or Death: Operative Factors in Ten Florida Death Penalty Cases*, 15 Am. J. Crim. L. 1, 28 (1988) ("[t]he existence of some degree of doubt about the guilt of the accused was the most often recurring explanatory factor in the life recommendation cases studied."); *See also* Jennifer Treadway, *Note, 'Residual Doubt'*

*in Capital Sentencing: No Doubt it is an Appropriate Mitigating Factor*, 43 Case W. Res. L. Rev. 215 (1992). Furthermore, the American Law Institute, in a proposed model penal code, similarly recognized the importance of residual doubt in sentencing by including residual doubt as a mitigating circumstance. So, the efforts of Tarver's lawyer, during trial and sentencing, to create doubt about Tarver's guilt may not only have represented an

adequate performance, but evidenced the most effective performance in defense to the death penalty.

We are also unpersuaded by the admission (during state collateral proceedings) of Tarver's lawyer that he had not prepared adequately for sentencing. See Atkins v. Singletary, 965 F.2d 952, 960 (11th Cir. 1992) (admissions of deficient performance are not significant). As noted by the Rule 20 court and the District

Court, Tarver's lawyer's decision to focus on an acquittal at the expense of sentencing was "a deliberate decision." State v. Tarver, 629 So.2d 14, 21 (Ala. Crim. App. 1993) (quoting Tarver's lawyer). The decision to focus on acquittal of capital murder was not unreasonable.[8] Despite

---

[8] Tarver was indicted for committing one capital offense: a murder during a robbery in the first degree, in violation of Ala. Code. § 13A-5-40(a)(2). To prove this crime, the state had to prove two lesser included offenses: murder, See id. § 13A-6-2(a)(1), and robbery in the first degree, See id. § 13A-8-41. The jury could acquit on murder or robbery in the first degree

overwhelming evidence that Tarver or his associate, Richardson, actually killed Hugh Kite, very little evidence made Tarver a better candidate than Richardson to be found to be the actual killer. See Tarver v.

_____

and still convict Tarver of the remaining lesser offense. Tarver's lawyer tried to convince the jury that Richardson, not Tarver, was the actual killer. If believed, Tarver would have been acquitted of murder and, therefore, murder during a robbery in the first degree. Tarver's jury was told they had to find that Tarver committed the killing. They were not instructed that Tarver could be found guilty if Richardson committed the killing.

State, 500 So.2d 1232, 1235-41 (Ala. Crim. App. 1986) (describing evidence against Tarver); See also Stewart, 877 F.2d at 855-56 (lawyer's decision to focus on innocence, even when evidence of guilt was great, rather than other forms of mitigation did not make counsel constitutionally ineffective).

C. The Giglio Claim

Tarver argues that, when he was tried, a plea agreement existed between his associate, Richardson, and the prosecution. The government's failure to disclose that agreement, says Tarver, violates *Giglio v. United States*, 405 U.S. 150 (1972). *Giglio* requires the government to disclose an agreement between a witness and the government that might motivate the witness to testify. *See Brown v. Wainwright*, 785 F.2d 1457, 1464-65 (11th Cir.

1986). The district court found that no agreement existed when Tarver was tried.

Richardson's attorney, Loftin, has testified on his understanding of the alleged agreement: "if Mr. Richardson testified against Mr. Tarver ... he would receive some consideration for that in that he would get a reduced sentence from the standpoint of not pleading to murder or capital murder."

In contrast, Davis, the district attorney who prosecuted Richardson and Tarver, testified that he told Loftin only this: "any cooperation [Richardson] gave us and if he told the truth in this matter would be taken into consideration." Davis added that he did not "reach an understanding with Mr. Loftin regarding a favorable disposition of Mr. Richardson's indictment in exchange for his testimony." In his own mind said Davis,

he believed that Richardson would not be tried for capital murder if Richardson testified for the prosecution; but he did not say that to Loftin. Loftin could not recall when he and Davis specifically agreed that Richardson would plead guilty to robbery, but Davis was certain the plea agreement was decided <u>after</u> Tarver's trial.

We accept the district court's finding — because it is not clearly erroneous — that whatever exchange may have taken place

49

between Loftin and Davis did not ripen into a sufficiently definite agreement before Tarver's trial: no disclosure under Giglio was required. We have said:

The [Giglio] rule does not address nor require the disclosure of all factors which may motivate a witness to cooperate. The simple belief by a defense attorney that his client may be in a better position to negotiate a reduced penalty should he

testify against a codefendant is not an agreement within the purview of _Giglio_.

_Alderman v. Zant_, 22 F.3d 1541, 1555 (11th Cir. 1994) (alternate holding). We have, however, recognized that a promise in this context is not "a word of art that must be specifically employed." _Brown v. Wainwright_, 785 F.2d 1457, 1464-65 (11th Cir. 1986). And, "[e]ven mere 'advice' by a

prosecutor concerning the future prosecution of a key government witness may fall into the category of discoverable evidence." Haber v. Wainwright, 756 F.2d 1520, 1524 (11th Cir. 1985).

But not everything said to a witness or to his lawyer must be disclosed. For example, a promise to "speak a word" on the witness's behalf does not need to be disclosed. See McCleskey v. Kemp, 753 F.2d 877, 884 (11th Cir. 1985). Likewise, a

prosecutor's statement that he would "take care" of the witness does not need to be disclosed. See Depree v. Thomas, 946 F.2d 784, 797-98 (11th Cir. 1991). Some promises, agreements, or understandings do not need to be disclosed, because they are too ambiguous, or too loose or are of too marginal a benefit to the witness to count.

The district court's finding of no "agreement or understanding . . . between

the District Attorney and Richardson or Richardson's attorney" is not clearly erroneous.[9]     Compare *Spaziano v. Singletary*, 36 F.3d 1028, 1032 (11th Cir. 1994) (standard of review) with *United States v. Cain*, 587 F.2d 678, 680 (5th Cir. 1979) (existence of plea agreement is a factual issue).   Loftin said that he only told his client, Richardson, that "if he would testify . . . it would be beneficial to him with

---

[9] We note that the State court also denied relief to Tarver on his *Giglio* claim in state collateral proceedings.

54

respect to reducing the charge." And Davis testified unequivocally at the Rule 20 hearing that no "arrangement or deal" existed. He testified only that Richardson's testimony would be "taken into consideration," and such a statement is too preliminary and ambiguous to demand disclosure. See Depree, 946 F.2d at 797 (promise to "take care" of witness does not require disclosure).

Richardson testified at trial that he was not promised a deal. We think Loftin and his client were merely trying to cooperate in hopes of improving their bargaining position later. _Giglio_, therefore, required no disclosure. _See_ _Alderman_, 22 F.3d at 1555.

If Loftin really believed an agreement existed with the district attorney, then his client committed perjury by testifying that no agreement existed; and Loftin

would have been required to call upon Richardson to correct his testimony or withdraw from representation. Loftin said he did not advise his client to change his testimony nor did Loftin withdraw from representation.

For the reasons we have discussed, we conclude that Tarver's claims were properly rejected by the district court.

AFFIRMED.